No. 89-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

EDGAR REYNOLDS, a/k/a
EDWARD REYNOLDS,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Golden Valley,
The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael Donahoe, Attorney at Law, Helena, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
John Paulson, Asst. Atty. General, Helena, Montana
Gerry M. Higgins, Special Deputy County Attorney,
Golden Valley County, Ryegate, Montana

Submitted on Briefs:    April 26, 1990

Decided: June 7, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Edgar Reynolds appeals a Golden Valley County jury verdict finding him guilty of sexual intercourse without consent. We affirm.

Defendant presents three issues for review:

1. Was defendant denied the right to a speedy trial by a delay of 243 days from arrest to trial?

2. Did the trial court's refusal to order the release and disclosure of "Janey Doe's" medical and psychiatric records deny defendant the right to confront witnesses against him or the right to due process?

3. Was it plain error to permit the use of expert testimony to identify "Janey Doe" as the victim of sexual abuse?

An information filed March 15, 1988 charged defendant Edgar Reynolds with sexual intercourse without consent in violation of § 45-5-503, MCA, or in the alternative, sexual assault in violation of § 45-5-502, MCA. The alleged victim was defendant's sixteen-year-old adopted daughter, "Janey Doe."

Acting on information that Janey Doe may have been sexually abused, Rochelle Beley, a social worker for the Montana Department of Family Services assigned to Golden Valley County, interviewed Janey in January, 1988. Ms. Beley noticed Janey had numerous cuts on her left arm. Fearing that the girl might be suicidal, Ms. Beley arranged for Janey Doe to meet with Sandi Burns, a Billings psychotherapist and expert on child sexual abuse. Ms. Beley also reported the suspected sexual abuse to the county attorney.

In March of 1988, Janey Doe entered the 2-North Psychiatric Unit of Billings Deaconess Hospital for crisis intervention. After her release she returned to her home but was soon placed in a

2

foster home in Ryegate. In June, 1988, Ms. Beley, after receiving a phone call from Janey, went to her foster home and found the girl sitting on the edge of the bathtub covered with blood. Janey Doe had used a razor to cut herself down her entire left arm, both legs and across her stomach. Janey was then admitted to Rivendell, a Billings treatment center for emotionally disturbed children. Following a two-month stay at Rivendell, Janey was placed in a Park City foster home.

After a change venue and three continuances the trial was held in Roundup on November 28-30, 1988. Janey Doe testified at trial that she had started cutting on herself in seventh or eighth grade because she could not deal with the defendant's sexual abuse. Defendant's abuse of Janey started before she was in the fourth grade and continued beyond November, 1985, when an earlier referral had been investigated. Typically, defendant would ask Janey to come into his bedroom and "scratch his back." Defendant would then have her masturbate him. Sometimes defendant would insert his fingers or a vibrator into Janey's vagina, show her pornography or perform other sexual acts on Janey Doe.

Defendant also testified at trial, denying having performed such acts against his adopted daughter. The jury returned a verdict of guilty of sexual intercourse without consent. At sentencing, defendant admitted sexually abusing Janey Doe and accepted responsibility for his actions.

Additional facts will be discussed as necessary.

> Issue 1: Was defendant denied the right to a speedy trial by a delay of 243 days from arrest to trial?

3

From the time the defendant was arrested on March 21, 1988, the trial was delayed by motion four times. During this time, however, defendant was free on bond.

Originally set for May 25, the trial was first reset for August 8 at the omnibus hearing following defendant's indication that he intended to file a change of venue. On July 27, Janey Doe's guardian ad litem filed a motion to continue the trial, citing as reasons the fact that Janey was under the care of attending physicians and mental health professionals and requiring Janey to participate as a witness at the time scheduled for trial would likely cause her to experience additional psychological trauma and emotional harm and would not be in her best interests. Defendant did not dispute the basis for the motion, but did object to the continuance as impeding his right to a speedy trial. Neither party requested a hearing on the motion. The motion was granted and trial reset for September 13.

Citing the same reasons as in the first motion to continue, Janey's guardian ad litem filed a second motion for continuance on August 30, 1988. Again defendant did not dispute the basis for the motion but did oppose the continuance as a denial of his right to a speedy trial. Following a hearing on the matter, the second motion for continuance was granted and trial set for November 14. At this point the District Court required the guardian ad litem to report the victim's condition to the court and counsel every two weeks.

Defendant's counsel requested the final motion for continuance, in order to accommodate a planned hunting trip and to

4

allow more time for witness interviews. The court granted the motion and trial was reset for November 28. Defendant accepts responsibility for the final two-week delay.

On the first day of the trial defendant filed a motion to dismiss for lack of a speedy trial. Following argument on the motion, the District Court denied the defendant's motion to dismiss.

The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the defendant's right to a speedy trial. The United States Supreme Court adopted a four-factor balancing test where the conduct of both the prosecution and the defendant are weighed to determine whether defendant's right to a speedy trial has been denied. Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The four factors to be balanced are: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of the right; and (4) prejudice to the defendant. State v. Tilly (1987), 227 Mont. 138, 140, 737 P.2d 484, 486 (citing Barker, at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117).

Considering the length of and reasons for the delay factors, we note 257 days passed from the time the information was filed on March 15, 1988 to the time trial commenced on November 28, 1988. A 257 day delay triggers a speedy trial inquiry. Tilly, at 140, 737 P.2d at 486; State v. Palmer (1986), 223 Mont. 25, 27, 723 P.2d 956, 958; State v. Chavez (1984), 213 Mont. 434, 441, 691 P.2d 1365, 1370. Such a delay gives rise to a presumption that the defendant has been deprived of a speedy trial and shifts the burden

5

to the State to either offer a reasonable excuse for the delay or demonstrate that the defendant was not prejudiced by the delay. Tilly, at 141, 737 P.2d at 486. Should both excuse and prejudice exist, these factors must be balanced. Id.

The 243-day delay was primarily the result of the two continuances requested by Janey's guardian ad litem and granted by the District Court. In moving for the continuances, the guardian stated that deep psychological harm to Janey would likely result from her testifying at that time. Janey Doe, a material witness for the State, was temporarily unavailable to testify because of her emotional instability. The State provides a reasonable excuse for delay when a material witness is unavailable to testify due to illness largely caused by the defendant. Tilly at 141, 737 P.2d at 486 (quoting Barker, at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117).

Of the 257 days, the defendant accepts responsibility for fourteen days caused by the defense attorney's request for the last continuance which delayed the trial an additional two weeks, leaving 243 days to account for. The State contends that the defendant's motion for a change of venue occasioned a 74-day delay chargeable to the defendant. We disagree. It is clear from the court's order granting the change of venue that no delay in the trial was anticipated by the District Court:

> IT IS ORDERED that the Defendant's Motion for Change of Venue is Granted in that the place of jury trial in this matter shall be moved from Ryegate, in Golden Valley County, to Roundup, in Musselshell County. Jury trial herein, estimated to take three days, remains set for 9:00 a.m. on August 8, 1988. Golden Valley County will assume the costs of said

6

trial.  (Emphasis in original.)

As the language of the order makes clear, the trial remained set for August 8, 1988.  We decline to attribute any delay to the defendant for exercising his option to request a change of venue.

Turning to the third factor, there is no doubt that defendant asserted his right to a speedy trial.  Both times the guardian ad litem filed for continuances, defendant objected to such motions, citing his right to a speedy trial.  Additionally, at the outset of the trial, defendant filed a motion to dismiss for lack of a speedy trial.  Such assertions of the right to a speedy trial are timely.  State v. Steward (1975), 168 Mont. 385, 390-91, 543 P.2d 178, 182.

As to the fourth factor, prejudice to the defendant, the Barker case identified three interests of a defendant which a delay of trial may prejudice: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety to accused; and (3) limiting the possibility the defense will be impaired.  Tilly at 143, 737 P.2d at 487 (citing Barker at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118).  Considering these interests as applied to the facts in the case at bar, we find no prejudice to the defendant.  Defendant had been free on bond since four days after his arrest, and was free to continue working as a long-haul trucker.  The record does not show nor does the defendant allege that he was unduly anxious or concerned.  "One may expect a certain amount of anxiety and concern when accused of a crime."  Tilly at 143, 737 P.2d at 488 (citing Chavez, supra).  Nor can we find evidence in the record that defendant's defense was possibly impaired.  Although defendant

7

contends that a Dr. Alpacka who had treated Janey Doe had left the state and could not be located, we do not find this prejudicial because neither the State nor the defendant knew what Dr. Alpacka's testimony would have been, Dr. Alpacka was not listed as a witness by either party, and the record does not disclose the extent of his involvement with Janey's treatment. We find the defendant was not prejudiced by the delay.

Accordingly, we hold the defendant was not denied his right to a speedy trial.

> Issue II: Did the trial court's refusal to order the release and disclosure of Janey Doe's medical and psychiatric records deny defendant the right to confront witnesses against him or the right to due process?

On the first day of trial defendant filed a motion to obtain Janey Doe's medical and psychiatric records, arguing defendant was entitled to copies of medical reports, psychological evaluations or interviews of any of the counselors or psychiatrists that treated Janey, including Rochelle Beley, Sandi Burns, Dr. Michael Sievert and Dr. Harry Newman. Defendant reasoned that because the State intended to call as expert witnesses psychotherapist Sandi Burns, psychiatrist Dr. Michael Sievert, Ms. Burns and Dr. Sievert would base their opinion testimony on conversations had with Janey Doe and other notes and reports on which the experts relied. Defendant claimed that in order to effectively cross-examine these witnesses and not be denied due process, defendant needed to examine Ms. Burns' and Dr. Sievert's notes on Janey. Defendant further argued that the State had access to information contained in social worker Rochelle Beley's investigative file on Janey Doe,

8

that such information may have been exculpatory, and the State was, therefore, obligated to disclose the file to defendant. Defendant also moved to prohibit the testimony of Burns, Sievert and Beley on the basis that the State failed to disclose the information contained in their investigative and psychological files.

The matter was heard on November 28. The discussion between the District Court and counsel indicates that the defense had received all medical and psychiatric reports that were in the possession of the prosecutors. Discussion also showed defense counsel had interviewed Ms. Beley and Ms. Burns before trial and that the prosecutors and guardian ad litem themselves had not examined the case files of the mental health professionals who had treated Janey Doe.

The files of Rochelle Beley, including any reports therein from Rivendell and Billings Deaconess Hospital's 2-North Psychiatric Unit, were subjected to an _in camera_ inspection by defense counsel. The prosecutor also agreed to ask psychotherapist Sandi Burns to bring her records for a similar _in camera_ inspection, but defense counsel made no further request for inspection.

While allowing an inspection of Rochelle Beley's file, the District Court denied motions as to all other records. Dr. Sievert did not testify at trial, nor did defendant subpoena him. Both Ms. Burns and Ms. Beley testified at trial and defense counsel cross-examined them without restriction.

We find that defendant was not denied either his right to confront witnesses or his due process rights because of the

District Court's refusal to grant defendant's motion to obtain all Janey Doe's medical and psychiatric records. We adopt the reasoning of our sister court in Colorado which held:

> [T]he right of a defendant to confront his accusers is not equivalent to a constitutionally compelled rule of pretrial discovery. Rather, the right of confrontation is a _trial_ right, guaranteeing an opportunity for effective cross-examination. See Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). (Emphasis in the original.)

People v. Exline (Colo. App. 1988), 775 P.2d 48, 49. Additionally, the United States Supreme Court has held that:

> The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.

Pennsylvania v. Ritchie (1987), 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54. (Footnote omitted.)

As we noted in a recent case, because defendant was afforded the opportunity to cross-examine all witnesses against him, the court's ruling denying defendant access to the victim's child abuse files of certain state agencies does not violate defendant's right to confront his accusers. State v. Thiel (Mont. 1989), 768 P.2d 343, 345, 46 St.Rep. 182, 185.

We further hold that the medical records pertaining to the victim's psychotherapeutic treatment are protected from disclosure by various recognized testimonial privileges which outweigh the defendant's purported need for or limited right to such information in the hands of a non-adversary third party. Section 26-1-807,

MCA, provides an unqualified privilege for confidential communications between a psychologist and client. The District Court acted properly in denying defendant's motion to obtain access to Dr. Sievert's, Sandi Burns' and Dr. Newman's records pertaining to Janey Doe.

> Issue III: Was it plain error to permit the use of expert testimony to identify the defendant Janey Doe as the victim of sexual abuse?

Defendant argues that even though no objection was made at trial, the admission of testimony by Rochelle Beley and Sandi Burns indicating Janey Doe had been sexually abused was improper because it was not scientifically reliable. Defendant claims the issue is reviewable, however, under Rule 103(d), M.R.Evid., and our previous decision in State v. Wilkins (1987), 229 Mont. 78, 746 P.2d 588, as "plain error."

The "plain error" rule is subject, in criminal proceedings, to subsection (2) of § 46-20-701, MCA, which reads:

> (2) Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:

> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or

11

(c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

Defendant presents no evidence that establishes the alleged error was prejudicial as to his guilt or punishment and that meets any of the three criteria listed in § 46-20-701(2), MCA.

We have stated before that when expert testimony in child sexual abuse cases has not been objected to at trial as improper, this Court will not entertain the issue on appeal. State v. Eiler (1988), 234 Mont. 38, 52, 762 P.2d 210, 219.

We affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices