No.  92-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

VICTOR JOHANSEN,

       Petitioner, Respondent,
       and Cross-Appellant,

   and

DEBRA JOHANSEN,

       Respondent, Appellant,
       and Cross-Respondent.



APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Sheridan,
               The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Margy Bonner, MacMaster and Bonner,
           Williston, North Dakota

       For Respondent:

           Gerald T. Archambeault, Gallagher & Archambeault,
           Glasgow, Montana

Submitted on Briefs:  May 27, 1993

Decided:  November 10, 1993

Filed:

                      Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Debra Johansen appeals from a decision of the District Court for the Fifteenth Judicial District in Sheridan County, Montana, which modified custody by transferring primary residential custody from Debra to her former husband, Victor. Debra asserts that the District Court erred when it limited evidence at the custody modification hearing to post-dissolution decree evidence. We reverse the order of the District Court.

There are two issues on appeal.

1. Did the District Court commit reversible error when it limited evidence at the custody modification hearing to post-decree evidence?

2. Did the District Court err when it prohibited Pamela Hodges, a social worker, from offering her opinion about the appropriate custodial placement of the Johansen children?

Debra (Debbie) and Victor (Vic) Johansen were married on November 29, 1980. They had three children together during their marriage. The children are 9, 11, and 12 years old.

On February 4, 1991, Vic petitioned the District Court for dissolution of the couple's marriage and requested that he be awarded primary residential custody of the parties' three children. In her response, Debbie requested that she be granted primary residential custody of the three children.

Prior to entry of the original dissolution decree, a home study was ordered pursuant to § 40-4-215(1), MCA, and was conducted by Pamela Hodges, a licensed social worker employed by the Sheridan

2

County Department of Family Services. The parties and their children also underwent psychological examinations conducted by Jim Allen, a licensed professional counselor employed by the Eastern Montana Mental Health Center.

Following the home study and psychological evaluations, the parties entered into a custody, support, and property settlement agreement on September 14, 1991.

The parties' marriage was dissolved by decree on September 17, 1991. The trial court did not hear evidence concerning the issues of custody and visitation before entering the decree. The court based the dissolution decree on the parties' custody, support, and property settlement agreement. Pursuant to the terms of the agreement, the parties were awarded joint custody, Debbie was given primary residential custody of the children, and Vic was awarded visitation according to a specific visitation schedule. Vic was granted residential custody during the children's summer vacation and Debbie was awarded visitation during those months.

On June 24, 1992, Vic filed a petition for modification of custody. In his petition and supporting affidavit, Vic alleged that custody modification was necessary because Debbie was uncooperative with visitation; she left the children home unattended on several occasions; and there was possible physical abuse by Debbie of the children, as revealed by bruises on one of the children's arms. The petition further alleged that modification was necessary because the children desired to live with Vic.

3

A custody modification hearing was held on October 8, 1992. At the hearing, Debbie attempted to offer evidence of the home study conducted by the social worker prior to the dissolution decree. Debbie wanted to inform the court that the original home study recommended that she be given residential custody of the children, and that this recommendation served as the basis of the parties' stipulated agreement.

Vic's attorney objected to the introduction of any pre-decree evidence and the District Court sustained Vic's objection. The court ruled that the matters leading up to the original stipulation were irrelevant and only allowed evidence of events that transpired after the original decree.

Further, the court would not allow Jim Allen to testify regarding his psychological assessments at the initial custody evaluation. Allen was only permitted to testify at the hearing about post-decree events. Finally, the District Court prohibited Pamela Hodges from giving her professional opinion of the appropriate custodial placement of the parties' children.

Subsequent to the hearing, the District Court modified custody by transferring primary residential custody of the parties' three children from Debbie to Vic.

I

Did the District Court commit reversible error when it limited evidence at the custody modification hearing to post-decree evidence?

4

On appeal, Debbie contends that the District Court erred when it excluded all pre-decree evidence at the custody modification hearing. She asserts that without pre-decree evidence, the court could not properly assess whether transferring primary residential custody to Vic was in the children's best interests.

Debbie explains that the dissolution decree was based upon a stipulated agreement between the parties, and therefore, the District Court never heard evidence concerning the issues of custody and visitation. Debbie asserts that had she been allowed to present pre-decree evidence, she would have been able to inform the court about the basis for the parties' stipulated agreement; and such evidence would have apprised the court about the reasons the home study recommended that Debbie have residential custody of the children.

Debbie relies on § 40-4-219(1), MCA, and cites the case of *In re Marriage of Sarsfield* (1983), 206 Mont. 397, 671 P.2d 595, for the proposition that, in custody modification proceedings, the court must consider not only facts that have occurred since the dissolution decree, but those which the court was unaware of at the time of the decree. Debbie argues that by restricting the evidence at the hearing to post-decree evidence, the court could not properly evaluate what was in the children's best interests.

Vic asserts that the pre-decree evidence is irrelevant and that what matters are the circumstances that have changed since the decree, not the facts leading up to the decree.

5

The standard of review of evidentiary rulings is whether the district court abused its discretion. *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1053, 1054. The trial court's ruling will be overturned when there is an abuse of discretion. *Crist*, 833 P.2d at 1054.

Section 40-4-219(1), MCA, provides:

> The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree <u>or that were unknown to the court at the time of entry of the prior decree</u>, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child . . . . [Emphasis added].

In *Sarsfield*, this Court held that § 40-4-219(1), MCA, "requires the trial court to consider post-decree facts, as well as pre-decree facts unknown to the trial court at the time the decree was entered, in determining both the 'change in circumstances' and the 'best interests' requirements." *Sarsfield*, 671 P.2d at 604. Moreover, it is reversible error for a trial court to limit evidence in a custody dispute to post-decree facts. *Matter of Custody of R.L.S.* (1981), 193 Mont. 469, 632 P.2d 703.

In all custody matters, the best interests of the children must be the court's primary concern. "The court cannot satisfy this concern if it consciously or unconsciously avoids facts about the parent seeking modification that took place prior to the entry of the initial decree." *Sarsfield*, 671 P.2d at 604.

6

The record reveals that the District Court did not comply with the requirements of § 40-4-219(1), MCA, or this Court's decision in *Sarsfield*, when it excluded pre-decree evidence at the hearing to modify custody of Debbie and Vic's children. The court's failure to consider the circumstances and reasons for the original custody agreement was an abuse of discretion and constituted reversible error. *Sarsfield*, 671 P.2d at 604; *Custody of R.L.S.*, 632 P.2d at 705.

On remand, the District Court is instructed to hear pre-decree testimony and then determine whether a custody modification, which transfers primary residential custody from Debbie to Vic, is still warranted.

In a separate argument, Vic contends that Debbie should not be allowed to argue on appeal that the trial court made an erroneous evidentiary ruling when it excluded pre-decree evidence, because she did not preserve her objection to the trial court's exclusion of such evidence. Vic relies on Rule 103, M.R.Evid., and asserts that Debbie did not make an offer of proof of the pre-decree evidence.

Pursuant to Rule 103, M.R.Evid.:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by an offer or was apparent from the context within which questions were asked.

We conclude that although the record indicates that Debbie made no offer of proof at the custody modification hearing, Debbie

7

satisfied subsection (2) of Rule 103, M.R.Evid.  The following testimony, excerpted from the transcript of the custody modification hearing, illustrates that Debbie's attorney made the substance of the pre-decree evidence apparent to the court from the context in which she asked Debbie questions.  See *Koppang v. Sevier* (1938), 106 Mont. 79, 75 P.2d 790.  Debbie's attorney asked Debbie the following on direct examination:

Q.   [BY MS. BONNER]  And what were the legal provisions for custody?

A.   I was given residential custody of the kids, and he was given them during the school year, and he was given it for them during the summer.

Q.   Okay. Was that decided by -- between you and Vic with the consultation of your attorneys or was that something that Judge Sorte decided?

A.   It was by us.

Q.   And why did you decide that way?  What was the reason why you went ahead and decided that?

A.   Because, first of all, both of the case studies -- we had a case study done, a home evaluation done, and we had the kids under --

MR. ARCHAMBEAULT [Vic's Attorney]: . . . I ask the court to find that to be beyond the scope of why we are here today to determine change of custody, not go all the way back and discuss the merits of our property settlement agreement one year ago before the divorce was even entered.

THE COURT: Yes, I would think we wouldn't go back that far.  We are dealing with a different matter now.

MS. BONNER: Okay. Your Honor, you will have to, I guess, rule on this question then.  I don't know if you consider this question out of order, but --

Q.   Debbie, did you enter into that agreement based on the recommendations made by Jim Allen and Pam Hodges on the custody and visitation?

8

MR. ARCHAMBEAULT: I am going to object before she answers again. . . .

. . . .

THE COURT: That agreement exists. What led up to that I don't think is -- that's a fact of life. It's been agreed upon.

. . . .

Q: [BY MS. BONNER] Okay, and why was visitation structured in that --

MR. ARCHAMBEAULT: I will object, Your Honor. It's the same question answered in another form. . . .

. . . .

Q. [BY MS. BONNER] Do you have concerns for the physical safety of your children --

A. Yes.

Q. -- if they are in his care?

A. Yes.

Q. What are your specific concerns?

A. Vic is a very violent man, and he treated me very violently the entire time we were married.

Q. Are you aware of any instance where he has displayed violence against your children?

A. Only -- the only thing that I am aware of is what I read when the case study was done when Ashley had made allegation of that he had --

MR. ARCHAMBEAULT: I am going to object, Your Honor. The case study, again, must be talking pre-time of termination of this marriage, and counsel knows that is beyond the scope of this examination.

THE COURT: I think it is. Sustained.

Q: [BY MS. BONNER] Has Vic as far as you are aware gotten any treatment for his violent temper?

Transcript, pp. 110-114; 135-136.

9

Not only did Debbie's attorney make the substance of the pre-decree evidence apparent from the context within which she asked questions, but the pre-decree information that Debbie sought to introduce was made a substantive part of the record at the time of the hearing through affidavits of the social worker and the licensed counselor. The District Court took judicial notice of the affidavits and made them part of the hearing, and therefore, the substance of the evidence was known to the court. Accordingly, Rule 103, M.R.Evid., was satisfied and it was proper for Debbie to assert on appeal that the trial court's exclusion of the pre-decree evidence was erroneous.

II

Did the District Court err when it prohibited Pamela Hodges, a social worker, from offering her opinion about the appropriate custodial placement of the Johansen children?

When Pamela Hodges was asked by Debbie's attorney if she had an opinion regarding the appropriate custodial placement of the Johansen children, Vic's attorney objected to the question on the grounds that the witness was not competent to testify to this issue. The District Court sustained the objection.

On appeal, Debbie contends that the District Court erred under the Montana Rules of Evidence when it excluded the social worker's testimony. Debbie asserts that pursuant to Rule 601, M.R.Evid., relating to competency of witnesses, and Rule 702, M.R.Evid., relating to expert testimony, Hodges should have been allowed to offer opinion testimony.

10

Vic concedes on appeal that Hodges' competency was not at issue. However, he asserts that Hodges lacked the special knowledge and skill necessary to make a custodial placement assessment, and therefore, she was not qualified to testify regarding the custodial placement of the Johansen children.

The determination of whether an expert witness is competent or qualified to testify rests largely with the trial court. *Foreman v. Minnie* (1984), 211 Mont. 441, 689 P.2d 1210. This Court will only disturb the district court's determination when there is an abuse of discretion. *Foreman*, 689 P.2d at 1212.

Rule 702, M.R.Evid., which pertains to testimony by experts, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Hodges has a master's degree in social work and she has extensive work history working with children. Moreover, she was familiar with the parties' situation. As a social worker for the Sheridan County Department of Family Services, Hodges conducted the home study with the parties and responded to several complaints alleging the parties' children were abused or neglected by their parents. Our review of the record reveals that, pursuant to Rule 702, M.R.Evid., Hodges was qualified to testify regarding the appropriate custodial placement of the Johansen children.

11

Vic's assertion that Hodges lacked the special knowledge and skill necessary to qualify her to offer a professional opinion about the appropriate custodial placement of the parties' children is without merit. A witness's specialization in an area goes to the weight of the witness's testimony rather than to his or her competency to testify. *Hunsaker v. Bozeman Deaconess Foundation* (1978), 179 Mont. 305, 321, 588 P.2d 493, 503. Moreover, Montana courts have recognized that social workers are qualified to testify on issues of child custody. *See, e.g., In the Matter of C.L.A.* (1984), 211 Mont. 393, 685 P.2d 931. Accordingly, we conclude that the District Court erred when it excluded Hodges' expert opinion testimony regarding the appropriate custodial placement of the Johansen children.

Debbie raises an additional issue on appeal. She requests this Court to determine whether the District Court erred when it concluded that the children's physical, mental, moral, or emotional health were seriously endangered by living with their mother. Because this case has been remanded to the District Court for a new trial in which the court is instructed to permit pre-decree evidence, we need not address this issue.

Finally, Vic filed a cross-appeal in which he asked this Court to address whether the District Court erred when it ordered him to pay Debbie's attorney fees. Vic asserts that he was entitled to attorney fees because the parties' separation agreement provides that the successful party should recover attorney fees in any

12

action subsequent to the dissolution. Because we are remanding this case to the District Court for a new custody modification hearing and determination, we need not address the issue of the award of attorney fees at the trial court level.

The order of the District Court is reversed and this case is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

November 10, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Margy Bonner
MacMaster and Bonner
P.O. Box 437
Williston, ND  58801

Gerald T. Archambeault
Gallagher & Archambeault
P.O. Box 512
Glasgow, MT  59230

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy