## STATE OF MONTANA, Plaintiff and Respondent, v. WILLIAM JAY ALLEN, Defendant and Appellant.

No. 95-189.
Submitted on Briefs April 11, 1996.
Decided May 3, 1996.
53 St.Rep. 403.
276 Mont. 298.
916 P.2d 112.

For Appellant: **William F. Hooks**, Appellate Defender, Helena.

For Respondent: **Hon. Joseph P. Mazurek**, Attorney General, **Elizabeth Griffing**, Ass't Attorney General, Helena; **Kim Christopher**, Lake County Attorney, **Robert Long**, Deputy County Attorney, Polson.

JUSTICE LEAPHART delivered the Opinion of the Court.

William Jay Allen (Allen) appeals from a jury verdict in the Twentieth Judicial District Court, Lake County, convicting him of robbery. We affirm.

The following issue is raised on appeal:

Did the District Court abuse its discretion in restricting the cross-examination of a witness on an issue that related to her credibility?

On the evening of July 9, 1994, Allen went to the apartment of Tana Bockman (Bockman) in Ronan, Montana, to demand money which he alleged Bockman owed to him. Allen and his then-girlfriend, Marcie Mestith (Mestith), now married to Allen, had stayed at Bockman's apartment in late May of 1994. While they were staying at the apartment, Bockman borrowed money from both Mestith and Allen. Bockman contended that she did not owe money to Mestith or Allen, rather, that the debt was offset as compensation for the couple's use of her apartment and for the time she spent babysitting for them.

When Allen arrived at the apartment on the night of July 9, 1994, an argument over the alleged debt ensued. During the argument, the telephone rang and Bockman awakened her teenage daughter Kenclena for the call. While Kenclena was speaking on the telephone, Bockman told Kenclena to call the police. Allen, who had earlier removed a gun from the waistband of his pants, began waving it around the room, pointed the gun at Kenclena directing her not to call the police and demanded anything of value in the apartment. He decided to take the television set as payment for the debt. Bockman helped Allen unplug and remove the television. A neighbor, Jerry Beck, testified that he saw Allen leave the apartment carrying a television and that he observed a gun stuck in the belt of Allen's pants. Allen testified that he did not threaten Bockman and denied having a gun. At trial, several witnesses testified on Allen's behalf that Bockman had a poor reputation in the community for veracity. In addition, Allen called witnesses who testified that Allen did not have a gun with him earlier in the day or when he returned from Bockman's apartment that night. The jury returned a verdict of guilty on the charge of robbery. Allen appeals.

Did the District Court abuse its discretion in restricting the cross-examination of a witness on an issue that related to her credibility?

Allen asserts that the District Court abused its discretion in sustaining the State's objection to Allen's attempted cross-examination of Bockman on questions relating to her mental health. On appeal, Allen argues that this error was of constitutional magnitude and warrants a new trial. Citing *Davis v. Alaska* (1974), 415 U.S. 308, 315, 94 S.Ct. 1105, 1109-10, 39 L.Ed.2d 347, 353, Allen asserts that he was denied his Sixth Amendment right to be "confronted with the witnesses against him" and to cross-examine witnesses. Allen argues

that he should have had the opportunity to impeach or discredit Bockman. *See, e.g., State v. Dahms* (1992), 252 Mont. 1, 7, 825 P.2d 1214, 1218. Further, relying on *State v. Gommenginger* (1990), 242 Mont. 265, 274, 790 P.2d 455, 461, that he should have been afforded wide latitude in cross-examination of the prosecution witness. Allen argues that the mental health or stability of a witness is an appropriate subject for cross-examination in a criminal trial and that foreclosing Allen's opportunity to cross-examine Bockman prejudiced him and denied him his Sixth Amendment right of confrontation and cross-examination.

The State counters that Allen did not make a proper offer of proof as to what evidence he would have presented through his cross-examination of Bockman. Accordingly, the State asserts, this Court has no basis for review. Rule 103(a)(2), M.R.Evid.; *State v. Hall* (1979), 183 Mont. 511, 515, 600 P.2d 1180, 1183. The State points out that Bockman's mental health records were privileged under § 26-1-807, MCA. Further, that the records were not in the State's possession and that the State did not have the right to obtain such records. *State v. Fina* (1995), 273 Mont. 171, ___, 902 P.2d 30, 36; *State v. Reynolds* (1990), 243 Mont. 1, 8, 792 P.2d 1111, 1115.

Allen asserts that at the pre-trial hearing the State was "willing to grant that the defendant may likely prove that this witness [Bockman] isn't competent mentally." Allen argues that, having conceded this at the hearing, the State may not change its theory on appeal. *State v. Henderson* (1995), 265 Mont. 454, 458-59, 877 P.2d 1013, 1016. Allen asserts that the District Court was aware of the substance of the information relating to Bockman's mental instability and that an offer of proof was unnecessary. Further, that an offer of proof was not required because counsel made the substance of the evidence apparent from the context in which the questions were asked. *In re Marriage of Johansen* (1993), 261 Mont. 451, 456, 863 P.2d 407, 411.

Regardless of whether or not Allen's cross-examination of Bockman was unduly restricted or whether an offer of proof was required, independent corroborating evidence supports the conviction. Two witnesses other than Bockman testified that Allen possessed a firearm while in or leaving Bockman's apartment and that he took the television. Kenclena testified at length regarding the events that occurred on the night of July 9, 1994. The following colloquy illustrates her recollection of the incident:

Q. [Deputy County Attorney Long] .... When he pulled the gun out, was he standing?

A. [Kenclena] Yes.

....

Q. Did you get a good long look at the gun?

A. Yeah.

Q. What did it look like?

A. I think it had [a] brown handle and it was silver and it was long.

Q. Were you surprised to see that gun?

A. Yeah.

Q. Were you literally staring down the barrel of the gun?

A. Yes, I was.

Therefore, Bockman's alleged mental incompetence or alleged psychiatric problems were not dispositive on the question of whether Allen took the television while brandishing a weapon. Here, the jury heard evidence from Kenclena that Allen flourished a firearm in the apartment and that she was scared and upset by the incident. Thus, Bockman's testimony was not the only evidence establishing that Allen took the television under threat of a weapon in violation of § 45-5-401(1)(b), MCA. In addition, Jerry Beck testified that he saw Allen carrying the television out of the apartment and saw "the butt of the gun sticking out of his belt where his jacket was pushed away from it."

This Court has held that prejudice is not assumed when error is alleged. *State v. Kutnyak* (1984), 211 Mont. 155, 165, 685 P.2d 901, 906. If error occurred, then prejudice must be demonstrated. Error will not be presumed nor will a criminal case be reversed for errors or defects appearing in the record which do not affect the substantial rights of the defendant. Section 46-20-701(2), MCA; *See also State v. Boe* (1963), 143 Mont. 141, 149, 388 P.2d 372, 377.

Here, even assuming that the District Court should have allowed Allen to further examine Bockman as to her mental health, we determine that Allen has not made the requisite showing of prejudice. Other evidence, namely, the testimony of Kenclena and Beck, supports the verdict. Since Bockman's testimony was cumulative, any alleged error in restricting cross-examination would not be grounds for reversal. Section 46-20-701(2), MCA; *Kutnyak*, 685 P.2d at 906; *Boe*, 388 P.2d at 377. Allen's substantial rights were not prejudiced by the District Court's limitation of his cross-examination of Bockman.

Affirmed.

CHIEF JUSTICE TURNAGE, JUSTICES NELSON, ERDMANN, GRAY, HUNT and TRIEWEILER concur.