No. 00-854

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 266

STATE OF MONTANA,

Plaintiff and Respondent.

v.

WILLIAM JAY ALLEN,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General;

C. Mark Fowler, Assistant Attorney General, Helena, Montana

Robert Long, Lake County Attorney, Polson, Montana

Submitted on Briefs: August 23, 2001
Decided: December 17, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellant, William Jay Allen, was charged with and convicted of robbery in the District Court for the Twentieth Judicial District in Lake County. The District Court sentenced him to 60 years in the Montana State Prison with an additional 10 year consecutive sentence for use of a weapon. Allen appealed his conviction, which we affirmed in *State v. Allen* (1996), 276 Mont. 298, 299, 916 P.2d 112, 113. He then sought postconviction relief. Following an evidentiary hearing, the District Court denied relief. Allen appeals from the order of the District Court which denied his petition for postconviction relief. We affirm the order of the District Court.

¶2 Allen raises the following issues on appeal:

¶3 1. Did the District Court err when it sentenced Allen based on allegedly false information?

¶4 2. Did Allen receive ineffective assistance from his court appointed counsel?

## FACTUAL BACKGROUND

¶5 William Allen was charged with robbery, a felony, pursuant to § 45-5-401(1)(b), MCA, in the District Court for the Twentieth Judicial District in Lake County on August 15, 1994. The State accused Allen of threatening Tana Bockman and her daughter with a handgun during the theft of a television set from the Bockman residence.

¶6 The jury convicted Allen and the District Court sentenced him to 60 years at the Montana State Prison, adding a consecutive 10 year sentence for use of a weapon pursuant to § 46-18-221, MCA. The District Court sentenced Allen as a persistent felony offender pursuant to § 46-18-502, MCA, based on Allen's prior felony convictions and the less than five year period that elapsed between the present offense and Allen's August 26, 1991,

release on parole for a felony burglary conviction in California. In the unerlying criminal proceedings, Allen was represented by Benjamin Anciaux.

¶7 Allen, represented by new counsel, appealed the District Court's judgment. We affirmed the District Court in *State v. Allen* (1996), 276 Mont. 298, 299, 916 P.2d 112, 113, and provided a summary of evidence presented at Allen's trial:

> On the evening of July 9, 1994, Allen went to the apartment of Tana Bockman (Bockman) in Ronan, Montana, to demand money which he alleged Bockman owed to him. Allen and his then-girlfriend, Marcie Mestith (Mestith), now married to Allen, had stayed at Bockman's apartment in late May of 1994. While they were staying at the apartment, Bockman borrowed money from both Mestith and Allen. Bockman contended that she did not owe money to Mestith or Allen, rather, that the debt was offset as compensation for the couple's use of her apartment and for the time she spent babysitting for them.
>
> When Allen arrived at the apartment on the night of July 9, 1994, an argument over the alleged debt ensued. During the argument, the telephone rang and Bockman awakened her teenage daughter Kenclena for the call. While Kenclena was speaking on the telephone, Bockman told Kenclena to call the police. Allen, who had earlier removed a gun from the waistband of his pants, began waiving it around the room, pointed the gun at Kenclena directing her not to call the police and demanded anything of value in the apartment. He decided to take the television set as payment for the debt. Bockman helped Allen unplug and remove the television. A neighbor, Jerry Beck, testified that he saw Allen leave the apartment carrying a television and that he observed a gun stuck in the belt of Allen's pants. Allen testified that he did not threaten Bockman and denied having a gun.

*Allen, 276 Mont. at 299, 916 P.2d at 113.*

¶8 On appeal, Allen argued that the District Court abused its discretion when it restricted his cross-examination of Bockman about her mental health. We concluded that Bockman's alleged mental incompetence was not dispositive on the question of whether Allen took the television while brandishing a weapon:

Here, the jury heard evidence from Kenclena that Allen flourished a firearm in the apartment and that she was scared and upset by the incident .... In addition, Jerry Beck testified that he saw Allen carrying the television out of the apartment and saw "the butt of the gun sticking out of his belt where his jacket was pushed away from it."

*Allen*, 276 Mont. at 301, 916 P.2d at 114.

¶9 Allen then filed his initial petition for postconviction relief on January 20, 1998, and the District Court appointed the Montana Appellate Defender to represent him. On May 6, 1998, Allen filed an amended petition. In a second amended petition, filed April 14, 2000, Allen alleged that because his sentence was based on incorrect information concerning a prior felony, his state and federal due process rights had been violated. He further alleged that he received ineffective assistance of counsel. After the second amended petition for postconviction relief was filed, the District Court held an evidentiary hearing on September 5, 2000.

¶10 After Allen's first petition was filed, Jerry Beck, in a document drafted while he was in the Lake County Jail, recanted his trial testimony that he had witnessed Allen leaving Bockman's apartment with a gun. The notarized statement was admitted at the hearing and states as follows:

I Jerry Beck want to say I lied and want to clear up Statements for Bill Allen and that Tana Bockman asked me to do her a favor and testify aginst [sic] Bill Allen she told me somethings to say in Her Behalf. I have Not been treatend [sic] to write this this is my own words.

¶11 However, at the September 5, 2000, hearing Beck reaffirmed his original testimony. Beck stated that he wrote and signed the recantation because he was in the B Block of the Lake County Jail with Allen. Beck testified that he was intimidated by Allen and feared for his safety.

¶12 Allen also testified at the evidentiary hearing. Allen stated that Anciaux failed to call a witness, John Lilly, who owned the pickup Allen borrowed to go to Bockman's apartment and who could have provided exculpatory evidence. Allen further testified that a 1978 conviction from San Luis Obispo, California, which was listed on the presentence investigation report as a felony, was actually a misdemeanor but that the court record had

been destroyed.

¶13 Following the hearing, the District Court denied Allen's petition in an order dated October 20, 2000.

## STANDARD OF REVIEW

¶14 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the court's finding are clearly erroneous and whether its conclusions of law are correct. *Bauer v. State*, 1999 MT 185, ¶ 17, 295 Mont. 306, ¶ 17, 983 P.2d 955, ¶ 17. In reviewing a district court's findings of fact, the Court (1) will determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court will determine if the trial court has misapprehended the evidence; and (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still hold that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. *Vernon Kills on Top v. State* (1996) 279 Mont. 384, 409, 928 P.2d 182, 197-98.

Claims of ineffective assistance of counsel are mixed questions of law and fact, and are reviewed de novo. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47.

## DISCUSSION

## ISSUE 1

¶15 Did the District Court err when it sentenced Allen based on allegedly false information?

¶16 Allen makes two separate but related arguments concerning allegedly false information that contributed to his conviction and sentence. First, Allen argues that his due process rights were violated because he was sentenced based on materially false and prejudicial information about the number of his prior felony convictions. Next Allen argues that Jerry Beck's recanted testimony was false and that he is actually innocent of the offense for which he was convicted.

¶17 Allen contends that one of his prior felony convictions was actually a misdemeanor

and that the District Court erred and violated his due process rights by relying on false information concerning the number of his prior felonies when it sentenced him.

¶18 The 14th Amendment to the U.S. Constitution and Article II, Section 17, of the Montana Constitution protect a defendant from being sentenced based on misinformation about the defendant's criminal history. *Bauer*, ¶ 20. Pursuant to this right, an offender must be given an opportunity to explain, argue, and rebut any information, including presentencing information, that may lead to a deprivation of life, liberty, or property. *Vernon Kills on Top v. State*, 2000 MT 340, ¶ 67, 303 Mont. 164, ¶ 67, 15 P.3d 422, ¶ 67. However, due process does not protect against all misinformation. Rather, the inquiry is whether the sentence was premised on materially false information. *Vernon Kills on Top*, ¶ 67. Where the sentencing court does not rely on erroneous information in sentencing the defendant, there is "nothing to correct or rebut" and the defendant is not entitled to be resentenced. *Vernon Kills on Top*, ¶ 67.

¶19 At the evidentiary hearing, Allen testified that a 1978 "Theft of a Vehicle" conviction in San Luis Obispo, California, was incorrectly listed in the presentence investigation report as a felony. Allen also introduced a letter from a clerk with the Superior Court in San Luis Obispo County in which the clerk stated that case files and dockets had been destroyed pursuant to state law. Therefore, there were no records available regarding Allen's 1978 conviction and sentence.

¶20 Whether or not Allen's 1978 conviction for "Theft of Vehicle" was a misdemeanor or a felony is a matter of law that is ascertainable by reference to the California code. Although the presentence investigation does not identify the specific statute that Allen was charged with violating, we take judicial notice of the fact that any theft of an automobile is defined as grand theft pursuant to the current California code. *See* Cal. Penal Code § 487 (d) (West 1999). This code section is identical to the effective law at the time Allen committed the offense. Therefore, Allen's 1978 conviction appears to be correctly classified by the presentence investigation as a felony conviction.

¶21 Regardless, we conclude that Allen's sentence was not premised on the allegedly false information and was therefore not in violation of his due process rights. In Finding of Fact #21, the District Court found that the persistent felony offender designation was supported by Allen's record "regardless of whether his 08/02/78 Theft of Vehicle conviction was a felony and whether the Defendant had four or five prior felonies did not affect said judgment." Similarly, in Conclusion of Law # 7, the District Court concluded "[t]hat the

designation of the first conviction shown on Defendant's Pre-Sentence Investigation Report as a felony or misdemeanor had no effect upon Defendant's sentence."

¶22 Because due process rights are not implicated unless the sentence was predicated on misinformation, the District Court did not err when it sentenced Allen as a persistent felony offender. Consequently, we affirm the District Court's sentence.

¶23 As for Allen's related contention that he is actually innocent of the offense in light of the allegedly false testimony provided by Jerry Beck, we conclude that the District Court's finding that Beck did not recant his trial testimony was not clearly erroneous. The issue in dispute in the underlying case was whether Allen used a handgun during the commission of the offense. The jury heard the testimony of Jerry Beck, who testified that he saw Allen with a gun as he left the premises. Beck later recanted his testimony and said he lied at trial. Still later while he was in custody in the Lake County Jail, Beck took back his recantation and affirmed his trial testimony after being interviewed by law enforcement officials.

¶24 Allen contends that the facts clearly demonstrate that he is actually innocent of the offense for which he was convicted. However, substantial evidence supports the District Court's finding that Beck's recantation of his trial testimony was not credible. The District Court found that Beck's July 1998 recantation was not credible because Beck was in the same cell block in the Lake County Jail with Allen. The District Court further found that Beck was intimidated by Allen and wrote the recantation statement as a result of intimidation and duress. These findings were supported by substantial evidence and, after reviewing the record, we conclude that the findings of the District Court as to Beck's recantation were not clearly erroneous.

## ISSUE 2

¶25 Did Allen receive ineffective assistance from his court appointed counsel?

¶26 Allen contends that his trial attorney, Benjamin Anciaux, provided ineffective assistance of counsel by (1) failing to conduct an adequate investigation of the underlying facts of the case; (2) failing to call a witness at trial regarding Allen's possession of a gun; and (3) failing to present evidence at the sentencing hearing that Allen had four rather than five prior felony convictions.

¶27 In deciding ineffective assistance of counsel claims, we have adopted the two-prong test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10. Pursuant to the *Strickland* test, the defendant bears the burden of showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064; *State v. Coates* (1990), 241 Mont. 331, 337, 786 P.2d 1182, 1185. Next, the defendant must show that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different - i.e., that the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Strickler v. Greene* (1999), 527 U.S. 263, 291, 119 S.Ct. 1936, 1953, 144 L.Ed.2d 286.

¶28 Allen's claim that Anciaux failed to conduct an adequate investigation is not supported by the record. No evidence has been presented that before trial or sentencing Allen's counsel failed to investigate. The relevant inquiry in an ineffective assistance of counsel claim asserting the failure to investigate is not what could have been done, but whether counsel's choices were reasonable. *See, e.g., Dawson v. State*, 2000 MT 219, ¶ 137, 301 Mont. 135, ¶ 137, 10 P.3d 49, ¶ 137 (concluding it was reasonable for Dawson's counsel not to pursue further investigation where there was no evidence that further investigation would be beneficial). We conclude that Anciaux's investigation was reasonable.

¶29 The decision not to call John Lilly, the owner of the truck Allen borrowed, to testify that Allen did not have a gun was reasonable. The jury had already heard testimony from other witnesses who testified that Allen did not have a gun before or after the offense. Counsel had no obligation to present cumulative evidence. Moreover, Allen fails to show how Lilly's testimony might have affected the verdict and therefore fails to establish prejudice pursuant to the second prong of the *Strickland* test.

¶30 Likewise, Allen fails to demonstrate how he was prejudiced by counsel's alleged failure to investigate whether Allen had four or five prior felonies. As discussed previously, the records concerning the prior offense at issue had been destroyed, and the statutory evidence available indicates that the conviction at issue was a felony. Finally, Allen does not demonstrate that but for Anciaux's failure to investigate the number of prior felonies the result of the trial would have been different. Accordingly, we conclude that Allen fails to meet the two part standard for ineffective assistance of counsel claims.

¶31 For these reasons, the District Court's order which denied Allen's petition for postconviction relief is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ JIM RICE