No. 80-217

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JAMES W. BALDWIN,

Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
In and for the County of Sweet Grass.
Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Stacey and Jarussi, Billings, Montana
Calvin Stacey argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris D. Tweeten argued, Assistant Attorney General,
Helena, Montana
Conrad B. Fredericks argued, Big Timber, Montana

---

Submitted: March 23, 1981

Decided: June 4, 1981

Filed: **JUN** 4 1981

*Thomas J. Kearney*
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals the sentence imposed by the Sweet Grass County District Court following his conviction of aggravated assault. A jury trial was held on March 10, 1980. The court sentenced defendant on March 17, 1980, to fifteen years imprisonment with five years suspended. He raises two issues challenging the legality of his sentence.

First, defendant contends that the trial court erred in considering for sentencing purposes, the facts underlying a prior charge of aggravated assault of which defendant was acquitted. Second, defendant asserts that he received an increased sentence because he chose to exercise his constitutional right to a jury trial instead of agreeing to plead guilty. We hold against the defendant on the first issue. Because we cannot determine from the record whether defendant was punished for exercising his right to a trial by jury, we vacate the sentence and remand for resentencing.

On November 26, 1979, defendant met some casual acquaintances in a bar in Big Timber. The defendant agreed to accompany four of the acquaintances to Room 10 at the Sweetgrass Motel to view and possibly purchase some drugs. He went to the motel in his pickup, accompanied by Michael and Elton Tronrud. The Tronrud brothers remained in the defendant's pickup while the defendant went into the motel room.

While in the motel room, a fight occurred in which the defendant suffered various minor injuries. After the fight, the defendant left the motel room and returned to his pickup. He asked Michael Tronrud to drive and told him to stop the pickup opposite Room 10. The defendant took a rifle out of the pickup and fired one shot through the curtained motel

-2-

window.    Fragments from the bullet and broken glass struck one of the occupants, causing minor injuries.

Defendant was charged by information with aggravated assault on December 3, 1979.  On December 13, 1979, a preliminary presentence investigation was ordered by the court with the consent of the defendant.  After reviewing the presentence report, the judge sent a letter to defendant's counsel, William Schreiber, stating that ". . . upon a plea of guilty the minimum sentence that I would give Mr. Baldwin would be a 5 year sentence with all but 45 days suspended, said 45 days to be served in the State Prison at Deer Lodge, Powell County, Montana."  In this letter, the judge also stated, "I feel/that this is as lenient as I can possibly be in the case, and that if he does not want to enter a plea on these conditions  why should we prepare to go to trial on the merits of the case."

Defendant chose not to plead guilty and went to trial. After defendant's conviction, the court ordered a supplemental presentence investigation prepared.

At the sentencing hearing, defense counsel objected to the references that both presentence reports made to defendant's acquittal on aggravated assault charges in Missoula in 1976. The first presentence report merely referred to the fact of acquittal.  The second contained defendant's own description of the events leading to the charge:  in the course of a brawl outside a Missoula bar, defendant shot a person in the stomach with a shotgun.  It was the defendant who voluntarily supplied the probation officer with the information included in the second presentence report.  Although the details of the incident are somewhat fuzzy, it appears that the defendant claimed self-defense.  The jury acquitted the defendant.

At the time of sentencing, the trial court stated that it would consider the fact that defendant was found not guilty on the Missoula charge of aggravated assault, but that it could not completely overlook the incident which gave rise to those charges. The court believed that the Missoula incident resembled the factual circumstances of the present case. Apparently considering both incidents together, the trial court inferred that the defendant had a volatile temper and a propensity for violence.

The trial court had the right to consider the facts leading to the 1976 aggravated assault charges in Missoula. A trial court may consider the broad spectrum of incidents making up the background of an offender in determining the proper sentence. See, section 46-18-101, MCA. A defendant is entitled to have his sentence predicated on substantially correct information. State v. Olsen (1980), ___ Mont. ___, 614 P.2d 1061, 1064, 37 St.Rep. 1313; State v. Knapp (1977), 174 Mont. 373, 570 P.2d 1138, 1141. A sentencing court cannot rely upon a previous criminal record if that record contains constitutionally infirm convictions. Ryan v. Crist (1977), 172 Mont. 411, 563 P.2d 1145, 1146. The sentencing court here relied neither on an erroneous criminal record nor an erroneous information. The trial court was not required to shut its eyes to the Missoula incident. It relied only on information volunteered by the defendant, and if the defendant believed that the presentence report distorted any of the information he had furnished, he was under an affirmative burden to refute, correct, or deny the facts related in the report. See, State v. Radi (1979), ___ Mont. ___, 604 P.2d 318, 320-21, 36 St.Rep. 2345. The defendant testified at the sentencing hearing, but did not

-4-

challenge the accuracy of the information in the presentence report.

The defendant next argues that the disparity between the sentence offered in the letter the trial judge sent to defense counsel and the sentence the defendant actually received, shows that he was penalized for standing on his right to a jury trial.

The federal constitution does not prohibit the granting of leniency to defendants who plead guilty. Corbitt v. New Jersey (1978), 439 U.S. 212, 218-20, 224, 99 S.Ct. 492, 58 L.Ed.2d 466; Brady v. United States (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. A policy of leniency following a plea is proper, but its converse, "extra" severity following trial, is not. See, e.g., United States v. Araujo (2d Cir. 1976), 539 F.2d 287, 292; People v. Sivels (1975), /324 60 Ill.2d 102, N.E.2d 422, 424; United States v. Thompson (7th Cir. 1973), 476 F.2d 1196, 1201, cert.den. 414 U.S. 918 (1973); United States v. Lehman (7th Cir. 1972), 468 F.2d 93, 110.

To punish a person for exercising a constitutional right is a basic due process violation. In Re Lewallen (1979), 23 Cal.3d 374, 590 P.2d 383, 386, 152 Cal.Rptr. 528; Bordenkircher v. Hayes (1978), 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604.

It may be difficult to distinguish between situations where leniency is offered in exchange for a plea and situations where the defendant is punished for exercising his right to trial by jury. In the absence of clear indications in the record to the contrary, a trial judge could justify any disparity between a sentence offered in exchange for a plea of guilty and the sentence actually imposed following a jury trial simply by characterizing the sentence offered in the plea bargaining process as an offer of leniency--regardless

of the judge's true motivations.  If the dividing line between the permissible practice of granting leniency in exchange for a plea of guilty and the prohibited practice of imposing an increased sentence as punishment for the accused's refusal to plead guilty is to be real and not semantic, then the action for the sentencing court must be objectively reviewable.  The discretion a sentencing court has in determining an appropriate sentence (section 46-18-101, MCA), does not mean it can be arbitrary discretion.  It must be an informed discretion--informed by the application of an objective standard.

The ABA Standards for Criminal Justice (2d ed. 1980), covers the question of whether a judge, in sentencing a defendant, improperly considered the defendant's failure or refusal to accept a plea bargain.  The Standards declare that defendants who elect to stand trial should not be punished for the exercise of their constitutional right to trial.  (Standard 14-§ 1.8(b), Standards Relating to Pleas of Guilty.)  It further provides that a defendant who goes to trial should not be punished for putting the State to its proof, and the defendant should receive only that sentence which properly serves the deterrent, protective, and other objectives of the criminal justice system.

In United States v. Stockwell (9th Cir. 1973), 472 F.2d 1186, 1187, cert.den. 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409, the Ninth Circuit held that federal district courts must not use their sentencing power "as a carrot and stick to clear congested calendars, and that they must not create an appearance of such a practice."

The Court expressly relied on ABA Standard 14-§ 1.8(b), supra.  The Court also held that:

-6-

". . . once it appears in the record that
the court has taken a hand in plea
bargaining, that a tentative sentence has
been discussed, and that a harsher sentence
has followed a breakdown in negotiations, the
record must show that no improper weight was
given the failure to plead guilty. In such
a case, the record must affirmatively show that
the court sentenced the defendant solely upon
the facts of his case and his personal history,
and not as punishment for his refusal to plead
guilty." 472 F.2d at 1187-88.

Because the record in that case left "unrebutted the inference

drawn by the defendant" that the trial judge punished him

for standing trial, the Court remanded for resentencing.

A mere disparity between the sentence offered during

plea bargaining and that ultimately imposed is not, of

itself, improper. In Re Lewallen, supra, 590 P.2d at 388;

People v. Dennis (1975), 28 Ill.App.3d 74, 328 N.E.2d 135,

138. But when that disparity is coupled by a clear indication

in the record that the trial judge imposed a harsher sentence

as punishment for defendant's rejection of a plea offer and

for his choice of going to trial, appellate courts have

either remanded for resentencing or reduced the defendant's

sentence themselves. E.g., In Re Lewallen, supra; Gallucci

v. State (Fla.App. 1979), 371 So.2d 148; State v. Boone

(1977), 293 N.C. 702, 239 S.E.2d 459; People v. Dennis, supra;

United States v. Stockwell, supra; see generally, Annot.

"Propriety of Sentencing Justice's Consideration of Defendant's

Failure or Refusal to Accept Plea Bargain," 100 A.L.R.3d 834

(1980). Further, an allegation that the sentence imposed

was intended as punishment for defendant's jury demand need

not be shown solely by the overt comments of the sentencing

judge--it may also be shown by inference. See, Gallucci,

supra; People v. Dennis, supra, 328 N.E.2d at 137; Stockwell,

supra. In Stockwell, and in Gallucci, the reviewing courts

doubted that the trial judge actually punished the defendant

for standing trial, but still deemed it advisable to vacate the defendant's sentence and remand for resentencing because of the uncertainty of that doubt.

To protect a criminal defendant's constitutional rights in plea bargaining situations and to help preserve public confidence in the judicial process, we today adopt ABA Standard 14-§ 1.8(b). To implement that standard, and to facilitate judicial review, a sentencing court which becomes involved in the plea bargaining process, and which imposes a harsher sentence after trial than was offered in exchange for a guilty plea, must specifically point out the factors that justify the increased sentence.

In this case, we cannot tell from the record why the trial court offered a very lenient sentence (45 days jail time) in exchange for a plea of guilty. Nor can we tell why the court found imposition of a harsher sentence appropriate after jury trial (10 years jail time). We have no assurance that the trial court did not increase the sentence in retaliation for defendant's insistence on a trial by jury.

The defendant's sentence is vacated and the cause is remanded for resentencing in a manner consistent with this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

-8-