No. 02-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 312

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

BRITT WINKLE, JR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and for the County of Stillwater,
The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Gary E. Wilcox, Attorney at Law, Billings, Montana
            Jeffrey G. Michael, Attorney at Law, Billings, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; Ilka Becker,
            Assistant Attorney General, Helena, Montana

            Robert Eddleman, Stillwater County Attorney, Columbus,
            Montana

                Submitted on Briefs:  September 5, 2002

                        Decided:  December 16, 2002

Filed:

_____
                     Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court

¶1   Britt Winkle, Jr., pled guilty to custodial interference and the Twenty-Second Judicial District Court, Stillwater County, sentenced him and entered judgment. Winkle appeals. We affirm.

¶2   The issue is whether the District Court violated Winkle's right to due process of law in sentencing him.

BACKGROUND

¶3   On August 24, 2000, Columbus, Montana, Police Officer Mike Fuss picked up a runaway 16-year-old girl from the Town Pump parking lot, where she was found with 37-year-old Winkle. The girl was taken to the Youth Detention Center in Billings, but escaped the next day. That evening, Montana Highway Patrol Officer Jeremy Lee located the girl--again with Winkle--in Winkle's truck on a dirt road approximately eight miles south of Columbus.

¶4   The State of Montana charged Winkle by information with custodial interference and driving without a valid driver's license. The District Court released him on bail under conditions which included avoiding all contact with the girl. Winkle waived his right to speedy trial and, in October of 2001, pled guilty to custodial interference pursuant to a plea agreement. In entering the plea, Winkle admitted he picked the girl up at the Youth Detention Center and took her to Stillwater County despite having no legal right to do so with a juvenile runaway.

¶5   The District Court scheduled sentencing for January 7, 2002, but continued it to February 1, 2002, at Winkle's request because he was having difficulty traveling back to Montana from New Mexico,

where he had relocated. At the beginning of the sentencing hearing, the court asked Winkle's counsel whether he had received a copy of the presentence investigation report and an attached letter dated January 15, 2002, from Tom Woods, the probation and parole officer who prepared the report. Winkle's counsel responded that the copies had been received. Winkle's counsel then referred to a letter from the victim's grandmother to Woods--a letter not of record--and said that, although that letter, and the presentence investigation report stated Winkle was living with the runaway girl, Winkle denied doing so. Winkle did state that the girl came to his home in New Mexico "from time to time" to see his son.

¶6 The court then inquired whether Winkle and his counsel had received a copy of a January 30, 2002, letter from Woods. Winkle's counsel replied he had not seen that letter and the court allowed time to review it.

¶7 After reviewing the January 30 letter, Winkle's counsel expressed concern that the court might be considering revoking Winkle's release on bail because the letter stated Woods had confirmed that the victim had been living with Winkle in violation of the "no contact" condition of his release on bail. Counsel stated he would like to "ignore the whole darn thing and sentence Mr. Winkle." The court assured him it was not considering revoking the release order and said that, given Winkle's expressed difficulties in traveling back and forth from New Mexico, they "probably ought to proceed to sentencing at this time." Counsel

3

said Winkle would prefer not to rebut the letters and asked that the sentencing proceed.

¶8 The prosecutor recommended a five-year suspended sentence pursuant to the plea agreement. Defense counsel recommended a three-year deferred imposition of sentence.

¶9 Woods, the only witness at the sentencing hearing, testified the presentence investigation report was incomplete because Winkle had been "substantially noncompliant" with efforts to prepare it. Regarding the substance of his January 15 letter, Woods testified that he had twice provided Winkle with presentence investigation questionnaires to fill out and return, but Winkle had never returned them or telephoned, as directed. Woods also expanded on his January 30 letter, testifying that on January 22, 2002, he received a telephone call from a relative of the runaway girl who told him the girl was now living with Winkle in New Mexico and that, on January 30, 2002, the manager of the apartment building where Winkle lived in New Mexico confirmed that the girl had been living with Winkle since December of 2000. Woods stated he did not feel Winkle was a good candidate for community-based supervision, and recommended that Winkle be committed to the Department of Corrections for five years.

¶10 The District Court orally sentenced Winkle to five years in the Department of Correction's custody, recommended that he be placed in boot camp, and authorized Winkle to petition for a reduction in the sentence if he successfully completes boot camp. The court found Winkle had been "unable to successfully follow the

4

rules and conditions of this Court even during the time that these matters were pending" and that it was unlikely Winkle would follow rules and conditions of probation.

¶11 After the District Court orally pronounced sentence, Winkle's counsel requested a stay of imposition of sentence. He stated he thought a continuance should have been granted and he believed Winkle's due process rights had been violated by consideration of the letters from Woods; he asked the District Court to "grant the continuance" at that time. The court denied the motion for a stay and remanded Winkle to the custody of the sheriff for execution of the sentence.

¶12 In its written sentence, in addition to restating the sentence orally imposed, the District Court stated it had "not considered, in arriving at the sentence imposed herein, any information which does not accord the Defendant full process of law[.]" Winkle appeals.

DISCUSSION

¶13 Did the District Court violate Winkle's right to due process of law in sentencing him?

¶14 The due process clauses of the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution protect a defendant from being sentenced based on misinformation. Due process requires that an offender be given an opportunity to explain, argue and rebut any information, including presentencing information, that may lead to a deprivation of life, liberty or property. *State v. Allen*, 2001 MT 266, ¶ 18, 307 Mont. 253, ¶ 18, 37 P.3d 655, ¶ 18 (citations omitted).

5

¶15 Winkle points out that, in *State v. Orsborn* (1976), 170 Mont. 480, 486, 555 P.2d 509, 513, we set forth three factors to be considered in determining whether the due process guarantee against sentencing misinformation has been violated: 1) whether the defendant was represented by counsel; 2) whether the defendant had the opportunity to rebut the information; and 3) whether the defendant affirmed or denied the charge. Winkle makes several *Orsborn*-related arguments which focus on the second factor--whether he had an opportunity to rebut the information. His major argument is that he did not have a reasonable opportunity to rebut, given the timing of the information, and that the District Court should have continued the sentencing hearing to permit him the necessary time to rebut the allegations.

¶16 There are several flaws in Winkle's argument. First, Winkle did, in fact, rebut the information by denying that he was living or cohabiting with the girl. His counsel asked that the court take his word on the denial. Second, Winkle's counsel did not request the continuance of the sentencing hearing that he seems to fault the court--and claim as a due process violation--for not granting. Indeed, counsel stated that "[his] client would prefer not to rebut that and we'll just proceed to sentencing." Winkle's assertion that a continuance should have been granted, together with his first and only request for such a continuance, were made only after the District Court inquired whether there was any reason why sentence should not be imposed, received negative replies from both counsel, and proceeded to orally impose sentence.

6

¶17 The decision to grant or deny a motion for a continuance is within the sound discretion of a district court, and the timeliness of a motion to continue is a legitimate factor for the court to consider in determining whether to grant such a motion. *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 11, 310 Mont. 519, ¶ 11, 52 P.3d 395, ¶ 11 (citations omitted). Here, the motion for a continuance was clearly untimely because it was made after counsel twice indicated sentencing should proceed and, indeed, after the oral imposition of sentence.

¶18 In this regard, Winkle asserts the District Court "preempted" a motion to continue by stating, "given . . . Mr. Winkle's expressed difficulties of coming back and forth in between where he lives and where this Court has jurisdiction, that we probably ought to proceed to sentencing at this time." As Winkle correctly observes, however, the court's suggestion took Winkle's difficulties into account. It did not preclude or "preempt" a continuance motion. In any event, as set forth above, Winkle's counsel stated later in the sentencing hearing that he "would prefer not to rebut that and we'll just proceed to sentencing" and also advised the court there was no reason why sentence should not be imposed.

¶19 When a criminal defendant contests matters in a presentence report, the defendant has an affirmative duty to present evidence establishing inaccuracies. If the defendant feels he or she has had insufficient time to bring in witnesses or other evidence to adequately rebut the contested information, the defendant should

7

request a continuance. *State v. Trangsrud* (1982), 200 Mont. 303, 308, 651 P.2d 37, 40. We conclude Winkle's failure to timely move for a continuance precludes consideration of his additional, purely speculative, assertion that the sentencing court would have denied a timely motion had one been made.

¶20 Next, Winkle contends that the District Court relied on the letters in imposing the sentence and erred in doing so. This contention, too, is flawed. First, in its written sentencing order, the District Court stated it "has not considered, in arriving at the sentence imposed herein, any information which does not accord the Defendant full process of law[.]" On this record, the only such "information" to which the court could have referred are the letters and Woods' related testimony. The District Court having stated it did not consider the information, we will not assume otherwise.

¶21 Winkle also contrasts this case with *State v. D.B.S.* (1985), 216 Mont. 234, 700 P.2d 630, *overruled in part by State v. Olson* (1997), 286 Mont. 364, 951 P.2d 571, and *State v. Valcourt* (1992), 254 Mont. 174, 835 P.2d 753, by noting that, in those cases, the courts specifically stated they were deleting portions of the presentence report to which the defense objected. Winkle claims no such assurance was given him by the District Court.

¶22 It is true that the District Court did not expressly delete portions of the presentence investigation report or testimony. Nor, however, did Winkle expressly object to consideration of any of the information. Nothing in *D.B.S.* or *Valcourt* concludes, or

8

even suggests, that a sentencing court must explicitly state the materials it is deleting or not considering, particularly where no specific objection to finite portions is made.

¶23 Winkle also argues in this regard that, notwithstanding the District Court's statement, "it is clear the court relied upon the information contained in the letters." He points to the court's sentencing statements that it was clear he could not follow the rules while the case was pending and that he had been unable to "follow the directions of the Court to date."

¶24 Woods' testimony, however, supports the District Court's reasoning on a basis independent of--and separate from--consideration of the letters, because Winkle failed in another way to follow the directions given him by the District Court. According to Woods, after Winkle entered his guilty plea, the court directed him to meet with Woods to prepare a presentence investigation. Winkle failed to complete the presentence investigation questionnaire Woods gave him or to call Woods to go over his answers to the questionnaire, as directed. In fact, Winkle never returned the questionnaire or a second copy Woods sent him. This testimony provides ample support for the District Court's determination that Winkle had been "unable to successfully follow the rules and conditions of this Court even during the time that these matters were pending."

¶25 Winkle having failed to establish that the District Court relied on any misinformation or that he was not given an opportunity to explain, argue and rebut information that led to a

deprivation of his liberty, we hold the District Court did not violate his right to due process of law.

¶26  Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE