No. 02-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 371

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JEFFREY GORDON MASON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 01-18,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel R. Wilson, Measure & Wilson, Kalispell, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Brian Morris, Solicitor,
Helena, Montana

Robert J. Long, County Attorney; Mitchell A. Young, Deputy County
Attorney, Polson, Montana

Submitted on Briefs:   December 23, 2003

Decided:   December 24, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The defendant, Jeffrey Mason (Mason), was charged in the Montana Twentieth Judicial District Court, Lake County, with ten criminal counts. Pursuant to a plea bargain agreement, all charges against Mason were dismissed except for two counts of assault, felonies in violation of § 45-5-201(1)(a), MCA (1997), and one count of criminal possession of a dangerous drug, a felony in violation of § 45-9-102(1), MCA (1999). Mason pled guilty to one of the felony assault charges and *nolo contendere* to the other, and pled guilty to criminal possession of oxycodone, a dangerous drug. At sentencing, the District Court found Mason was a persistent felony offender and a violent felony offender and sentenced him to three thirty-year terms, to be served concurrently with twenty years suspended on each term. Mason now challenges the legality of his sentence. We affirm in part, reverse in part, and remand for further proceedings.

¶2    Mason presents the following issues on appeal:

¶3    1. Did the District Court violate Mason's due process rights at the sentencing hearing by considering allegations of other crimes which were dismissed pursuant to the plea bargain agreement?

¶4    2. Did the District Court abuse its discretion at the sentencing hearing by considering allegations of other crimes which were dismissed pursuant to the plea bargain agreement?

¶5    3. Did the District Court err in designating Mason a violent felony offender?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     In January of 2001, Department of Public Health and Human Services (DPHHS) personnel advised the Lake County Sheriff's Department that they were investigating reports that a fourteen-year-old male juvenile, C.S., had been sexually assaulted by his stepfather, Jeffrey Mason, for a period of years before being removed from the home in 1999 following evidence of physical abuse. DPHHS requested investigators interview C.S. concerning the alleged abuse.

¶7     Following a forensic evaluation of C.S. by Karen Mielke, M.D., Detective Andy Cannon (Detective Cannon) of the Lake County Sheriff's Department interviewed C.S. During the interview, C.S. disclosed to Detective Cannon that he had been physically and sexually assaulted by Mason for a period of approximately eight years, following his mother's marriage to Mason. In addition to horrific sexual molestations and drug use, C.S. relayed an instance of physical abuse in which Mason grabbed him by the back of the head, slammed him up against a wall, then knocked him to the floor where he repeatedly hit and kicked him. As C.S. was getting up to exit the residence, Mason seized the child, threw him into a cedar chest, and then out the front door. C.S. suffered several bruises as a result of the assault. C.S. also indicated Mason occasionally beat him with a belt.

¶8     Based upon the information C.S. provided during the interview, the Lake County Sheriff's Department obtained a search warrant for Mason's house. In executing the warrant, officers discovered items consistent with C.S.'s allegations of Mason's sexual abuse and drug use, including pornographic magazines and videos discussing incest, sex toys,

3

marijuana, a hypodermic needle, and a cooking spoon bearing a powdery, white substance consistent with methamphetamine.

¶9 On February 13, 2001, Mason was charged with crimes allegedly perpetrated against C.S. during the time the child resided with him, including two counts of assault, felonies in violation of § 45-5-201(1)(a), MCA (1997), and two counts of felony incest, in violation of § 45-5-507(1), MCA (1997). Mason was additionally charged with one count of criminal possession of dangerous drugs, a misdemeanor in violation of § 45-9-102(2), MCA (1999); and one count of criminal possession of drug paraphernalia, a misdemeanor in violation of § 45-10-103, MCA (1999).

¶10 Following Mason's arrest, the three children living at the Mason residence, N.S., R.M., and A.M., were removed from the home and placed with separate foster parents. Following their removal, R.M., Mason's biological child, then five years old, disclosed that he was also physically and sexually abused by Mason.

¶11 On April 18, 2001, the State filed an amended Information, which included those offenses allegedly committed against R.M., including one count of felony assault on a minor, in violation of § 45-5-212, MCA (1999), and one count of incest, a felony in violation of § 45-5-507(1), MCA (1999). The State also added to the charges two counts of criminal possession of dangerous drugs, felonies in violation of § 45-9-102(1), MCA (1999), for the alleged possession of methamphetamine and oxycodone.

¶12 On October 18, 2001, Mason entered a plea bargain agreement with the State, agreeing to plead guilty to one count of felony assault on C.S. and *nolo contendere* to the

4

other count of felony assault on C.S., and to plead guilty to possession of oxycodone, a dangerous drug. The plea agreement also required that Mason relinquish his parental rights to R.M., N.S., and A.M. in a separate proceeding pending before the Lake County District Court. In exchange, the State would dismiss the remaining charges against Mason and recommend that he be sentenced, pursuant to Montana's Persistent Felony Offender Statute, to thirty years in state prison with all but ten years suspended.

¶13 That same day, Mason appeared before the District Court and entered pleas according to the plea bargain agreement. The court accepted Mason's pleas, dismissed the remaining charges, and ordered the preparation of a Presentence Investigation Report (PSI). Mason informed the court that he felt the context in which the psychological evaluation performed by Edward Trontel, Ph.D., earlier that year was prejudiced against him in light of the fact that Dr. Trontel had previously interviewed C.S. regarding allegations of physical abuse. Mason indicated he was willing to submit to a new psychological evaluation, which the State did not oppose, and the court allowed.

¶14 On November 29, 2001, the District Court received a PSI prepared by Probation and Parole Officer Kim Christensen (Christensen) for Mason's sentencing hearing. In addition to the new psychological evaluation performed at Mason's request, Christensen attached the original psychological evaluation prepared by Dr. Trontel to the PSI. Dr. Trontel's report referenced C.S.'s allegations of "long-standing, extensive, and sadistic sexual molestations" by Mason, as well as Mason's arrest for child sexual abuse. The PSI additionally contained the following handwritten statement, dictated and signed by C.S.:

> I don't feel its [sic] fair that Jeff should only due [sic] 10 years. He should get 40 years and no parole. He should get at least 10 years probation. I feel that everyone should know he is a sex offender and abuser. I will live with what he did to my-self [sic] and family for the rest of my life. Jeff beat me and raped and sodomized me orally and anally almost every day. He also threatened to kill me if I ever told anyone.

A newspaper article concerning the sentence of a man convicted for sexually molesting a boy was attached to C.S.'s statement. Based upon the "substantiated physical, psychological and emotional abuse [by] the Defendant, the allegations of sexual abuse made by the victim in this cause, the Defendant's admission he whipped his stepson, and reports that indicate the Defendant used drugs in front of his children," Christensen recommended that, as a condition of his probation, Mason have no contact with children under eighteen years old.

¶15 Mason responded with a Sentencing Memorandum objecting to many of the factual matters and conditions of sentence recommended in the PSI. In particular, Mason objected to the inclusion of C.S.'s statement and the attached newspaper article. Citing relevant case law in support, Mason maintained that it would be fundamentally unfair and a violation of his constitutional right to due process to be sentenced based upon conduct that was unproven and for which he had not been convicted.

¶16 On December 3, 2001, the District Court held a sentencing hearing at which Mason, along with his counsel, were present. The State offered the testimony of social worker, Robin Moll (Moll), who testified, over Mason's objection, that she believed Mason sexually abused all his children. Moll further testified that, upon removing the children from the home following Mason's arrest, she observed bruising on R.M.'s ears and body, and a bruise on N.S.'s forehead.

6

¶17    After hearing the testimony presented, the District Court found Mason a persistent felony offender and a violent felony offender and sentenced him to three thirty-year sentences at the Montana State Prison, or thirty years per offense, with twenty years suspended on each count.  At the close of the hearing, Mason's counsel asked the District Court whether it had considered C.S.'s statement in fashioning Mason's sentence, to which the court replied:

> It certainly has considered all the statements of both the young people and the adults in fashioning this sentence, and has been primarily, though, focused on the sentence by the attorneys who are most familiar with the facts and circumstances of this case and who entered into a plea agreement that granted the court a limited amount of discretion and also had the opportunity to present evidence in support of their positions today.

The court rejected, without analysis, Mason's contention that consideration of the statements related to unproven conduct violated his right to due process.

¶18    Mason challenges the legality of his sentence on the basis that the District Court violated his guarantee to due process of law at the sentencing hearing by considering allegations of unproven sexual crimes, and, additionally, erred in designating him as a violent felony offender.  Mason requests this matter be remanded to the District Court, with a new judge presiding, for a sentence determination based solely upon his offense conduct.

**STANDARD OF REVIEW**

¶19    This Court reviews a district court's imposition of a sentence for legality.  *State v. Horton*, 2001 MT 100, ¶ 17, 305 Mont. 242, ¶ 17, 25 P.3d 886, ¶ 17.  The standard of review of the legality of a sentence is whether the sentencing court abused its discretion.  *Horton*,

7

¶ 17. In reviewing the court's findings of fact, our standard of review is whether those findings are clearly erroneous. *Horton*, ¶ 17. When the issue on appeal concerns whether the district court violated the defendant's constitutional rights at sentencing, the question is a matter of law which we review *de novo* to determine whether the district court's interpretation of the law is correct. *State v. Bedwell*, 1999 MT 206, ¶ 4, 295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4; *State v. Guillaume*, 1999 MT 29, ¶ 7, 293 Mont. 224, ¶ 7, 975 P.2d 312, ¶ 7.

## DISCUSSION

¶20 **Did the District Court violate Mason's due process rights at the sentencing hearing by considering allegations of other crimes which were dismissed pursuant to the plea bargain agreement?**

¶21 The due process clauses of the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect a defendant from being sentenced based upon misinformation. *Bauer v. State*, 1999 MT 185, ¶ 20, 295 Mont. 306, ¶ 20, 983 P.2d 955, ¶ 20. Due process requires that an offender be given an opportunity to explain, argue, and rebut any information, including presentencing information, that may lead to a deprivation of life, liberty, or property. *State v. Allen*, 2001 MT 266, ¶ 18, 307 Mont. 253, ¶ 18, 37 P.3d 655, ¶ 18. However, due process does not protect against all misinformation–rather, the inquiry turns on whether the sentence was premised on materially false information. *Bauer*, ¶ 22. When a criminal defendant contests matters in a presentence report, the defendant has an affirmative duty to present evidence establishing inaccuracies.

8

*State v. Winkle*, 2002 MT 312, ¶ 19, 313 Mont. 111, ¶ 19, 60 P.3d 465, ¶ 19; *Bauer*, ¶ 22. Furthermore, "where a sentencing court is found not to have relied on improper or erroneous information in sentencing a criminal defendant, there is 'nothing to correct or rebut' and, therefore, the defendant is not entitled to resentencing on due process grounds." *Bauer*, ¶ 24 (citations omitted).

¶22 The facts of this case clearly demonstrate that Mason had a meaningful opportunity to explain, argue, and rebut the information contained in the PSI, as well as the testimony presented by the State at the sentencing hearing. Mason was represented by counsel throughout the proceedings, had an opportunity to review the PSI prior to the sentencing hearing and, in fact, objected to many of the factual matters and sentencing recommendations contained therein. At the sentencing hearing, Mason's counsel extensively cross-examined the State's witnesses, including Robin Moll, who testified under cross-examination that she believed Mason physically and sexually abused all his children. Although Mason had the opportunity to call witnesses to testify on his behalf in order to explain, argue, or rebut Moll's allegations or the information in the PSI, he did not do so.

¶23 Nonetheless, Mason argues the District Court erred in considering evidence of sexual crimes because these offenses were dismissed by the State pursuant to the plea bargain agreement. While we find Mason's argument logically appealing, we conclude that the law does not compel the conclusion that the District Court abused its discretion in considering the challenged evidence here. In imposing a sentence, the sentencing court may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the

9

defendant, the defendant's background and history, mental and physical condition, and any evidence the court considers to have probative force. *State v. Collier* (1996), 277 Mont. 46, 63, 919 P.2d 376, 387. We have held this includes evidence of other acts, even those resulting in acquittal or which are dismissed pursuant to a plea bargain agreement. *State v. Baldwin* (1981), 192 Mont. 521, 524, 629 P.2d 222, 224; *Collier*, 277 Mont. at 63, 919 P.2d at 387. In *Baldwin*, this Court held the district court had the right to consider facts leading to aggravated assault charges, for which the defendant had been previously acquitted, noting that "a trial court may consider the broad spectrum of incidents making up the background of an offender in determining the proper sentence." *Baldwin*, 192 Mont. at 524, 629 P.2d at 224.

¶24 Similarly, in *Collier*, we upheld the district court in permitting the county attorney at the sentencing hearing to question a police officer at length concerning preparations the defendant made to bring about the death of her former husband, despite the defendant's plea bargain agreement with the State, which dismissed the original solicitation of deliberate homicide charge in exchange for defendant pleading guilty to criminal endangerment. *Collier*, 277 Mont. at 63, 919 P.2d at 387.

¶25 Here, as in *Collier*, there is nothing in Mason's plea bargain agreement preventing the State from presenting the facts of the case during the sentencing hearing. Nor is the author of the PSI prevented from providing information concerning the circumstances of the offense. Rather, Montana law requires a probation officer preparing a PSI to inquire into and report upon such things. Section 46-18-112, MCA (1997), provides in relevant part:

(1) Whenever an investigation is required, the probation officer shall promptly inquire into and report upon:

(a) the defendant's characteristics, circumstances, needs, and potentialities;

(b) the defendant's criminal record and social history;

(c) the circumstances of the offense;

. . .

(e) the harm caused, as a result of the offense, to the victim, the victim's immediate family, and the community;

. . .

(3) The court may, in its discretion, require that the presentence investigation report include a physical and mental examination of the defendant.

Thus, pursuant to the above statute, C.S.'s statement concerning the alleged sexual abuse, as well as Dr. Trontel's evaluation of Mason referencing allegations of sexual crimes, were properly included in the PSI. If Mason believed the information in the PSI or the testimony presented at the sentencing hearing was inaccurate, he was under an affirmative duty to refute, correct, or deny such information or testimony. *See Kills on Top v. State*, 2000 MT 340, ¶ 68, 303 Mont. 164, ¶ 68, 15 P.3d 422, ¶ 68. Because Mason failed to show the District Court relied upon materially false information in sentencing him, there is "nothing to correct or rebut," and, therefore, Mason is not entitled to resentencing on due process grounds.

¶26 Neither has Mason demonstrated that the evidence could not otherwise be considered. It is important to note that the District Court indicated that it did not primarily rely on this evidence, and had been constrained in its discretion by the plea agreement. Further, the State had good reason to offer the brief testimony it did regarding Mason's actions in regard to the other victims. The plea agreement called for Mason to relinquish his parental rights to R.W.,

11

N.S. and A.M. in a separate proceeding. Therefore, it was appropriate for the District Court to consider evidence of the danger Mason presented to the other children in order to approve this provision of the agreement. We conclude that the District Court did not abuse its discretion in doing so.

¶27 **Did the District Court abuse its discretion at the sentencing hearing by considering allegations of other crimes which were dismissed pursuant to the plea bargain agreement?**

¶28 Mason's second argument on appeal is essentially a repetition of the first. According to Mason, the District Court exceeded its general statutory authority by imposing a sentence based upon allegations of unproven criminal acts. However, no specific statutory provision was violated. Because we conclude the District Court did not violate Mason's due process rights at sentencing by considering allegations of other crimes which were dismissed pursuant to the plea bargain agreement, we need not address whether the District Court abused its discretion in considering such allegations.

¶29 **Did the District Court err in designating Mason a violent felony offender?**

¶30 At the sentencing hearing, the District Court found that Mason's excessive use of force in punishing C.S., which the court concluded was a violent offense, caused the child to develop a serious mental health condition. The court accordingly designated Mason a violent felony offender for sentencing purposes. Mason challenges the District Court's designation and argues that, as a nonviolent felony offender, he is entitled to special consideration in sentencing.

¶31 In an effort to achieve its sentencing goals, the State of Montana has adopted an extensive list of principles to guide sentencing courts. Section 46-18-101(3), MCA (1997), provides in relevant part:

> (e) Sentencing practices must include punishing violent and serious repeat felony offenders with incarceration.
> (f) Sentencing practices must provide alternatives to imprisonment for punishment of those nonviolent felony offenders who do not have serious criminal records.

Thus, nonviolent felony offenders are entitled to special consideration in sentencing, the criteria for which is set forth at § 46-18-225, MCA (1997).[1]

¶32 Although "violent felony offender" is not specifically defined by statute, § 46-18-104(3), MCA, defines a "nonviolent felony offender" as one who has "entered a plea of guilty to a felony offense other than a crime of violence or who has been convicted of a felony offense other than a crime of violence." A "crime of violence" includes "a crime in which an offender uses or possesses and threatens to use a deadly weapon during the commission or attempted commission of a crime," as well as "a crime in which the offender causes a serious bodily injury or death to a person other than himself." Section 46-18-104(2)(a) and (b), MCA. Pursuant to § 45-2-101(64), MCA, "serious bodily injury" is a bodily injury that creates a substantial risk of death, or causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ. The term also includes serious mental illness or impairment. Section 45-2-101(64)(b), MCA.

---

[1]All statutory references hereinafter refer to the 1997 Montana Code Annotated.

¶33    The State contends that Mason's use of a belt in committing the assault against C.S. elevates this crime to a violent offense because, depending upon the manner in which it was used, a belt may be considered a weapon.  As correctly cited by the State, § 45-2-101(76), MCA, defines "weapon" as "any instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." However, the State overlooks the statutory language of § 46-18-104(2)(a), MCA, which defines a "crime of violence" as one in which the offender uses or possesses and threatens to use a *deadly weapon* during the commission of the offense.  As this Court has long since recognized, a "'deadly weapon' is any object or weapon which is used in such a manner as to be capable of producing death."  *State v. Bently* (1970), 155 Mont. 383, 409, 472 P.2d 864, 877.

¶34    In this case, the State presented no evidence and the District Court made no findings that the belt was used in a manner in which it was capable of producing death.  Indeed, the only testimony presented concerning Mason's use of the belt came from his ex-wife at sentencing, who testified that she listened from outside the bedroom as Mason "strapped" C.S.  While Mason's conduct may well have been excessive, there is no evidence that he used, or threatened to use, a deadly weapon during the commission of the offense, as required by § 46-18-104(2)(a), MCA.

¶35    This notwithstanding, the District Court aptly noted that a crime of violence includes one in which the offender causes serious bodily injury to another, including injuries resulting in serious mental illness or impairment. *See* §§ 46-18-104(2)(b) and 45-2-101(64)(b), MCA. Based upon Robin Moll's testimony that C.S. was diagnosed with Post Traumatic Stress

14

Disorder following his removal from the Mason residence, the District Court concluded that Mason caused C.S. to suffer from a serious mental health condition, a serious bodily injury, and sentenced Mason as a violent felony offender.

¶36 As this Court recently emphasized in *State v. Hocevar*, 2000 MT 157, ¶ 112, 300 Mont. 167, ¶ 112, 7 P.3d 329, ¶ 112, a "crime of violence" is a crime in which the offender *causes* a serious bodily injury. In this case, there was simply no evidence before the District Court that Mason caused C.S.'s mental health condition. Accordingly, the District Court erred in designating Mason a violent felony offender for purposes of sentencing. We reverse on this issue and remand to the District Court for resentencing in accordance herewith.

¶37 Finally, Mason's request for assignment of a new judge upon remand is denied. The parties' briefing has not discussed a division which exists in the law regarding substitution of a new judge for resentencing. In *Coleman v. Risley* (1983), 203 Mont. 237, 249, 663 P.2d 1154, 1161, we held that assignment of a new judge upon remand was reserved for "unusual circumstances." *See also United States v. Arnett* (9th Cir. 1979) 628 F.2d 1162, 1165. We also set forth three factors by which the necessity of a new judge upon remand would be determined. *Coleman*, 203 Mont. at 249, 663 P.2d at 1161.

¶38 In 1989, we adopted the rule now codified at § 3-1-804(g), MCA, which provides, in part, that "[i]n criminal cases, no further right of substitution shall arise when the cause is remanded for resentencing." In *State v. Willson* (1991), 250 Mont. 241, 247, 818 P.2d 1199, 1203, we applied this language in denying the defendant's request for a new judge upon remand for resentencing. However, in *State v. Smith* (1993), 261 Mont. 419, 445, 863 P.2d 1000, 1016, we ordered assignment of a new judge upon remand, citing the *Coleman* factors,

15

and did not reference § 3-1-804(g), MCA. There has been no attempt by the Court to reconcile the holdings of *Willson* and *Smith*.

¶39    Because the division in the law was not briefed by the parties, we decline to address it here. Concluding that Mason would not be entitled to a new judge upon remand under application of either standard, we deny his request.

¶40    Affirmed in part, reversed in part, and remanded.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice W. William Leaphart concurring in part and dissenting.

¶41    I concur in part and dissent.

¶42    This Court has worked diligently to protect the rights of those accused of crime at every stage of the criminal process. Our decisions reflect the various constitutional rights that are implicated when the State seeks to impose criminal punishment for conduct. By way of example only, a person accused of a crime is accorded the following protections: (1) freedom from pre-indictment delay, *State v. Curtis* (1990), 241 Mont. 288, 787 P.2d 306; (2) adequacy of charging document, *State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900; (3) the right to speedy trial, *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866; (4) the State's burden of proving guilt beyond a reasonable doubt, *State v. Bauer*, 2002 MT 7, 308 Mont. 99, 39 P.3d 689; (5) the right to remain silent, *State v. Shreves,* 2002 MT 333, 313 Mont. 252, 60 P.3d 991; (6) freedom from double jeopardy, *Demontiney v. Mt. Twelfth Judicial Dist.,* 2002 MT 161, 310 Mont. 406, 51 P.3d 476; (7) the right to trial by jury with a unanimous jury verdict, *Hardaway*; (8) the right to have juries selected in compliance with statutory requirements, *State v. LaMere,* 2000 MT 45, 298 Mont. 358, 2 P.3d 204; and (9) the right to appeal, § 46-20-104, MCA.

¶43    With the present decision, those accused of crime are put on notice that the panoply of rights guaranteed by the United States and Montana Constitutions and heretofore jealously guarded by this Court can be conveniently circumvented by the artifice of having a sentencing judge impose punishment for what is euphemistically referred to as "other" or "relevant" conduct. This allows the State to impose criminal sanctions without the inconvenience of a formal charge, a trial, a conviction or an appeal. The State can charge

17

one offense and, then upon conviction for that offense, parade a whole host of "other" uncharged conduct before the sentencing judge in order to enhance the ultimate penalty. The State is even encouraged to exploit this artifice by filing multiple charges for purposes of gaining psychological leverage, then dropping all but one or two of the charges as an inducement to the defendant to enter a guilty plea. Then, once the plea is entered, the State, through the backdoor of "other" conduct, can introduce evidence relating to all the charges which were dismissed. In a procedure more befitting a French tribunal where the defendant is presumed guilty, *U.S. v. Burney* (1956), 6 C.M.A. 776, 802, 21 C.M.R. 98, 124, the presumption of innocence is jettisoned and the burden is placed on the defendant to show that the information is inaccurate. *State v. Winkle*, 2002 MT 312, 313 Mont. 111, 60 P.3d 465. Even more appalling, the State can introduce evidence of conduct related to charges for which the defendant was tried and acquitted. *State v. Baldwin* (1981), 192 Mont. 521, 629 P.2d 222.

¶44 The Court cites *State v. Collier* (1996), 277 Mont. 46, 63, 919 P.2d 376, 387, for the proposition that a sentencing court may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background and history, mental and physical condition, and any evidence the court considers to have probative force. In *Collier*, the defendant pled guilty to criminal endangerment. He contended that, since the original charge of solicitation of deliberate homicide had been dismissed, the court erred at sentencing in allowing the prosecutor to question a police officer concerning the preparations Collier made to bring about the death of her ex-husband. The State contended that since the factual basis for both the original charge of solicitation

and the amended charge of criminal endangerment was the same, it was permissible to allow the officer to explain the facts of the case. I have no quarrel with the State presenting the "facts of the case" at issue–and if those facts overlap with other charges that were dismissed or were not charged in the first instance, so be it. However, that is a far cry from adopting a broader rule that allows the State to introduce evidence or information concerning conduct (uncharged or acquitted) occurring at another time and place or involving another victim under the rubric of defendant's "history" or "character."

¶45    In the present case, although Mason's conviction related solely to assaults on C.S., the court allowed testimony from a social worker that Mason abused all his children and that the social worker had observed bruising on R.M. and N.S. If the State sought to punish Mason for his abuse of R.M. and N.S., then it should have pursued those charges. Once the State agrees to drop the charges relating to R.M., it should be estopped from introducing information or evidence concerning those charges at the sentencing. Rather, it should be limited to proving the facts of the remaining charge, i.e. the case relating to the assault of C.S.

¶46    Section 46-18-112, MCA, requires the probation officer to report to the sentencing court as to the "criminal history" of the defendant. When read in the context of the constitutional guarantees of due process, trial by jury, unanimous verdict and right to appeal, "criminal history" can only mean conduct for which there has been a charge and conviction. I agree with the Hawaii Supreme Court's conclusion that a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment. "An adjudication of guilt is required before a sentence may be imposed." *State v. Valera* (Haw. 1993), 848 P.2d

376, 383 (citing *State v. Nunes* (Haw. 1992), 824 P.2d 837 (remanding for re-sentencing before new judge after striking defendant's suppressed statements from the PSI)).

¶47    Both the federal and state constitutions require that, in order to obtain a criminal conviction, the State must proceed by way of formal charges and a jury trial (with all the attendant constitutional guarantees). If we create an exception for all "other" or "relevant" conduct presented at sentencing, the exception swallows not only the rule, but both the Montana and United States Constitutions.

¶48    To the extent this decision allows the State to present evidence or information about the facts of the case relating to assaults on C.S., I concur. To the extent the Court allows the State to present evidence of uncharged criminal conduct occurring at other times or places or against other victims, I dissent.


                                        /S/ W. WILLIAM LEAPHART


Justice Patricia Cotter joins in the concurring and dissenting opinion of Justice Leaphart.


                                        /S/ PATRICIA COTTER

20