FILED

08/30/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0014

DA 21-0014

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 170N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

JACK WARREN MAXVILL, JR.,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC 2018-50
Honorable Jason T. Marks, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          Ellen Donohue, Mineral County Attorney, Superior, Montana

Submitted on Briefs: July 13, 2022

Decided: August 30, 2022

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A Mineral County jury found Jack Warren Maxvill, Jr., guilty of misdemeanor criminal trespass to property, second-offense partner or family member assault (PFMA), and criminal mischief arising from Maxvill's unlawful entrance into his estranged wife's home. Maxvill argues that the State failed to present sufficient evidence that his wife reasonably apprehended bodily injury and that the District Court erred by sentencing him to the mandatory minimum for a second-offense PFMA without making any findings that Maxvill had a prior PFMA. We affirm.

¶3 Early morning, November 2, 2018, Maxvill's wife, S.M., called police to her home because her estranged husband, Maxvill, had come over without notice or permission, entered her home despite her pleas for him to leave, and caused S.M. and her daughter to flee the home. The State charged Maxvill with Burglary, under § 45-6-204(1)(a), MCA, second-offense PFMA, under § 45-5-206(1)(c), MCA, third-offense PFMA, under § 45-5-206(1)(c), MCA, Criminal Mischief, under § 45-6-101, MCA, and Driving While Privilege to do so is Suspended or Revoked, under § 61-5-212, MCA. The State charged Maxvill with second-and third-offense PFMAs—one as to S.M. and one as to the

daughter—based on a prior domestic violence conviction. The State charged both PFMA counts under "reasonable apprehension of bodily injury in a partner or family member."

¶4 At trial, the State presented four witnesses. First, S.M. testified that she and Maxvill were married but had lived separately for over three years when, on November 2, 2018, Maxvill came to the home that S.M. shared with their then twelve-year-old daughter, J.M. Maxvill gave no warning before he arrived, despite S.M.'s expressed desire that he remain clear of the premises, coupled with the knowledge that Child and Family Services (CFS) could remove J.M. from her mother's custody if S.M. had contact with Maxvill or allowed him to come to the home.

¶5 At five o'clock that morning, S.M. went to her front window when she heard her dog barking. She saw Maxvill outside. When S.M. refused to let him in and told him to go away, he started to yell at S.M. that he needed help and money. "He had his face up to the window," and S.M. testified that this action scared her—she knew he was "desperate." S.M. continued to plead with Maxvill to leave, but he entered S.M.'s home through the back door by knocking loose a piece of plywood used to cover a broken windowpane. He reached through the open pane and opened the door from inside. Urged by her mother, J.M. ran from the home to get help. J.M. and her mother previously rehearsed this escape plan in case Maxvill came to the home.

¶6 To again try to get Maxvill to leave, S.M. told him she would meet him at 9:00 a.m. at the county courthouse, when it opened to the public. She chose this location so there would be other people to "protect" her. When Maxvill still refused to leave, S.M. ran from her home and called the police while she waited under a streetlight. S.M. waited in the

cold, barefoot, for over an hour-and-a-half until her family friend, Dawn Bauer, arrived with J.M. Bauer immediately took both S.M. and J.M. to the Sheriff's Office.

¶7 Soon after, S.M. sought and obtained an order of protection against Maxvill for both herself and her minor daughter. The order of protection remained in effect at the time of trial. S.M. expressed her hesitancy to testify; she informed both parties of her wish to be left out of proceedings. She gave evasive answers on both direct and cross-examination regarding her fear of Maxvill. She testified that she was upset, afraid for her daughter, and worried about CFS. She made it clear that CFS dominated her concerns and that at the time of the incident she feared Maxvill's presence could cause her to lose custody of J.M. When pressed, she told both parties that she could not say she did not fear Maxvill or that she did not fear for her safety. She provided somewhat inconsistent answers. When asked if she was not afraid of Maxvill, she said, "Not going to say that." She also said, however, "It would be hard for me to say I was in fear." When defense counsel asked S.M. if she feared Maxvill would "beat" her, she replied, "You'd be a fool if you weren't afraid alone with a child in the house and someone comes to your back door and wants to come in."

¶8 The State next called Deputy Funke, the officer dispatched to S.M.'s 911 call. He testified to his experiences with victims of domestic violence and to his interactions with S.M. and J.M. When Funke spoke to her, S.M. "seemed angry." Funke testified that he had witnessed this type of reaction before in victims of domestic violence. He also testified that he had witnessed domestic violence victims minimize their injuries and the threats made to them. Additionally, he testified that he had seen victims offer inconsistent recollections of domestic violence. Funke explained that his recommendation for PFMA

4

charges against Maxvill was based on the behaviors he witnessed from S.M. and J.M.—behaviors he knew were consistent with those typically present in victims of domestic violence. He commented specifically on the urgency with which S.M. and J.M. left their home in the early morning while it was still dark and cold, without wearing shoes or socks.

¶9 The State also called Tom Metcalf and Dawn Bauer to testify regarding J.M.'s whereabouts after she ran from her home. J.M. ran two blocks to Metcalf's house—the first she found with a light on—without shoes or a coat, while it was still dark outside. J.M. expressed to Metcalf fears that her father was attempting to kill her mother. Metcalf called Bauer, who testified that she picked up J.M. from Metcalf's house and that J.M. appeared "terrified." J.M. told Bauer she awoke to the sounds of glass breaking, loud noises, and her mother screaming at her to "run, run, run." J.M. told Bauer she wore "regular" clothes, as opposed to pajamas, because both she and her mother always slept in clothes, ready to leave, in case Maxvill ever came to the home. J.M. did not know where her mother was and told Bauer they needed to find her; J.M. indicated that it was not safe to return to the home. Bauer testified that she feared for the safety of both S.M. and J.M.

¶10 After the close of the State's evidence, Maxvill moved to dismiss all charges for insufficiency of the evidence under § 46-16-403, MCA. The District Court found that a rational juror could convict Maxvill on all charges, except the PFMA associated with J.M. The District Court found J.M.'s apprehension to stem from fear for her mother's personal safety, not for her own. The court dismissed the PFMA associated with J.M., but the PFMA associated with S.M. remained. Maxvill called no witnesses. The jury returned guilty verdicts for criminal trespass, second-offense PFMA, and criminal mischief. At the

5

sentencing hearing, neither party called witnesses. The District Court imposed consecutive jail sentences on the offenses, with credit for time already served. On the PFMA count, the court sentenced Maxvill to one year, with all but seventy-two hours suspended and credit for seventy-two hours served, along with a $300 fine.

¶11 Prior to trial, the State submitted both a presentence investigation report (PSI) and a criminal history to the District Court record. Both documents indicated Maxvill had a prior conviction for domestic battery in Illinois. Maxvill objected on the basis of unfair prejudice to the inclusion of a jury instruction that indicated his prior conviction. Maxvill did not object to the accuracy of the PFMAs enhanced by this prior conviction at any point during the proceedings.

**Sufficiency of the PFMA evidence**

¶12 Whether sufficient evidence exists to convict a defendant is an application of law to facts, which this Court reviews de novo. *City of Helena v. Strobel*, 2017 MT 55, ¶ 8, 387 Mont. 17, 390 P.3d 921. To determine the sufficiency of evidence under this standard, we review the trial record to determine whether, when considered in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Strobel*, ¶ 8.

¶13 A person commits the offense of PFMA, under § 45-5-206(1)(c), MCA, if the person "purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member." "Reasonable apprehension" is assessed under an objective standard—"whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *State v. Finley*, 2011 MT 89, ¶ 29, 360 Mont. 173,

6

252 P.3d 199 (citations omitted). Under this objective standard, the State need not establish a subjective or personal fear of bodily injury in a victim; rather, the State must produce evidence that a "reasonable person would have realized that bodily injury could result." *Finley*, ¶ 29 (citations omitted). Circumstantial evidence may provide, in part or in entirety, the basis for a criminal conviction. *State v. Vukasin*, 2003 MT 230, ¶ 20, 317 Mont. 204, 75 P.3d 1284. Such evidence establishes a fact that, if true, "affords an inference or presumption" of another fact's existence. Section 26-1-102(1), MCA. "Thus, the direct proof of other facts may give rise to an inference that the victim sustained reasonable apprehension of bodily injury." *Vukasin*, ¶ 20.

¶14 Maxvill argues that the State failed to provide sufficient evidence to convict him of PFMA because S.M. inconsistently testified to her fear of Maxvill and testified to the greater fear of CFS taking her child. Maxvill contends that, based on the evidence provided at trial, no reasonable person would have reasonably apprehended bodily injury. The State provided the following evidence: S.M. called police to her home when Maxvill showed up at 5:00 a.m.; S.M. repeatedly pleaded with Maxvill to leave; S.M. feared CFS's involvement in her daughter's custody if Maxvill was there; Maxvill's presence scared S.M., and she knew him to be "desperate"; Maxvill entered the home forcibly without permission; S.M. urged her daughter to run for help, utilizing the routine they practiced in case Maxvill appeared; S.M., too, ran from her home in the dark and waited alone outside, barefoot in the November cold for over an hour-and-a-half to avoid Maxvill; and, after this incident, S.M. applied for and was granted an order of protection against Maxvill. Two other witnesses, Metcalf and Bauer, testified to the fear they had for S.M. based on J.M.'s

7

description of the events. Deputy Funke offered to the jury, based on his experiences, that domestic violence survivors often change their stories and minimize injury or threat. Funke explained why he recommended PFMA charges, including the urgency with which S.M. and J.M. left the home, without wearing shoes or socks, while it was still dark and cold.

¶15 Though S.M. made some inconsistent statements, the State presented enough evidence, both direct and circumstantial, to support the jury's finding that a reasonable person in S.M.'s position reasonably would have apprehended bodily injury from Maxvill. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found "reasonable apprehension of bodily injury" beyond a reasonable doubt. The District Court correctly denied Maxvill's motion to dismiss.

**Sentencing for a second PFMA**

¶16 This Court reviews criminal sentences for legality to determine whether they are statutorily authorized. *State v. Lodahl*, 2021 MT 156, ¶ 11, 404 Mont. 362, 491 P.3d 661. Generally, "we will not hold a district court in error based on an objection raised for the first time on appeal." *State v. Coleman*, 2018 MT 290, ¶ 7, 393 Mont. 375, 431 P.3d 26. This Court may, however, review a facially illegal sentence, even when the claim is raised for the first time on appeal. *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). Defendants are permitted to challenge their sentences under this exception if the sentencing court "lacked statutory authority to impose [the sentence], if the condition falls outside the parameters of the applicable sentencing statutes, or if the court did not adhere to the affirmative mandates of the applicable sentencing statutes." *Coleman*¸ ¶ 7. A sentence is not illegal if it falls within statutory parameters. *See State v. Kotwicki*, 2007 MT

8

17, ¶ 13, 335 Mont. 344, 151 P.3d 892. The sentencing court has authority to consider the "broad spectrum of incidents," including facts that led to criminal charges and any other evidence the court considers probative to sentencing. *State v. Baldwin*, 192 Mont. 521, 524, 629 P.2d 222, 224 (1981). The court still, however, must afford a criminal defendant an opportunity to challenge the accuracy of information that contributes to the sentence. *See State v. Hocevar*, 2000 MT 157, ¶ 103, 300 Mont. 167, 7 P.3d 329. "When a criminal defendant contests matters in a presentence report the defendant has an affirmative duty to present evidence establishing inaccuracies." *State v. Mason*, 2003 MT 371, ¶ 21, 319 Mont. 117, 82 P.3d 903 (citations omitted).

¶17 Maxvill argues that his sentence for second-offense PFMA is illegal because evidence of his prior domestic violence conviction was not established at trial or during the sentencing hearing. Maxvill fails to establish any facial illegality to his sentence. He admits, in both his opening and reply briefs, that his sentence does not exceed the statutory parameters of a PFMA for either a first or second offense. The Illinois conviction was included in his PSI and criminal history—part of the District Court record—prior to trial; Maxvill did not present evidence to refute the accuracy of these documents at his sentencing hearing; and he did not argue that these documents contained any inaccuracies. Nor does Maxvill now argue the validity of his prior conviction, only that it was used to enhance his sentence; he failed to object on this issue. Because Maxvill fails to raise a plausible argument that his sentence is illegal, *Lenihan* does not apply. We therefore will not review Maxvill's unpreserved claim on appeal. We affirm the District Court's sentence.

9

¶18   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  The District Court's interpretation and application of the law were correct. The jury had sufficient evidence to convict Maxvill of second-offense PFMA, and the District Court imposed a legal sentence.  The judgment is affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR