DA 10-0592

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 264

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MAYSON LYNN SIMMONS, a/k/a
MAYSOON LYNN SIMMONS

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 09-124
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender; Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant
Attorney General; Helena, Montana

          William Fulbright, Ravalli County Attorney; Hamilton, Montana

Submitted on Briefs:  August 10, 2011

Decided:  October 25, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Mayson (a/k/a Maysoon) Lynn Simmons (Simmons) appeals her sentence from the Twenty-First Judicial District Court. The sole issue on appeal is whether the court unlawfully sentenced Simmons in violation of her due process rights. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2     The State arrested and charged Simmons with distribution of drugs. Simmons lawfully held a medical marijuana caregiver card but was accused of distributing marijuana to people without medical marijuana user cards. Simmons was released after posting bond. While on release, Simmons confronted and intimidated a confidential informant linked to her drug arrest. Based on this incident, the District Court revoked her bail and permitted the State to amend the Information to include a new charge of felony witness tampering. The District Court ordered that Simmons be transported to the Montana State Hospital (MSH) for purposes of a mental evaluation to determine her fitness to proceed to trial.

¶3     Following her evaluation at MSH, Drs. John Van Hassel and Virginia Hill issued a report determining Simmons did not suffer from a mental disease or defect, or from a developmental disability, and she was capable of understanding the proceedings against her and assisting in her defense. However, Drs. Van Hassel and Hill did diagnose Simmons with cannabis dependence and opioid abuse, compounded by "Personality Disorder [Not Otherwise Specified] (Mixed Personality Disorder with Antisocial, Narcissistic, Borderline and Histrionic Features)."

¶4 Simmons was returned to the custody of the Ravalli County Detention Center (RCDC) for approximately three months and was then released to house arrest. During this time, the State filed an insurance fraud charge against Simmons for fraudulently billing time as a massage therapist. Simmons was arrested again when she made additional threats against a different individual she believed was an informant.

¶5 Simmons pleaded guilty to one count of criminal distribution of dangerous drugs for providing medical marijuana to someone without a user card, one count of distribution for providing oxycodone pills, and one count of theft by insurance fraud. She pleaded no contest to one count of tampering with a witness.

¶6 During the sentencing hearing, Lieutenant Scott Leete, a commander of the RCDC, testified that Simmons is "probably one of the most problematic inmates that I've experienced," because she "challenge[d] standard operating procedures, demanded a lot of attention, special conditions regarding diet, visitation, concessions for . . . a specialist to come in to see her, issues with visitation, medical issues, property issues, commissary issues." On cross-examination, following defense counsel's questions concerning treatment for Simmons's medical and mental health issues at the jail, the court sustained objections to questions suggesting inadequate mental health services at RCDC. Defense counsel explained that services available at RCDC were relevant to Simmons's behavior and issues concerning rehabilitation and appropriate placement. In response, the court stated "I think we have already been way too far down this road. I'm not going to grade her based on her deportment in the jail. I care about the crimes she committed."

3

Simmons called two witnesses; both provided testimony which sought to explain Simmons's behavior while incarcerated at RCDC.

¶7     Following the conclusion of the hearing, the District Court sentenced Simmons to twenty years in prison with ten years suspended. In addition to the testimony at the sentencing hearing, the court considered the pre-sentence investigation, the MSH evaluation, and a mental health evaluation conducted on Simmons's behalf by licensed clinical social worker Paul Sells. Based on the evaluations, the court found Simmons would be unlikely to respond quickly, if at all, to correctional or rehabilitative treatment and would be likely to commit other crimes if given the opportunity. The court noted Sells's conclusion that Simmons's personality disorder would be exceedingly difficult to treat and stated, "there is no conventional treatment for a serious personality disorder of this type." The court observed, "the Defendant's personality disorder has manifested itself through negative behavior in the detention center and intimidation of an individual [Simmons suspected was a confidential informant]."

¶8     On appeal, Simmons argues the District Court violated her right to due process by considering evidence from the sentencing hearing it stated it was not going to consider, namely her behavior while at RCDC. She argues the court limited her opportunity to explain or rebut the evidence by cutting short her cross-examination, yet considered it in passing judgment.

## STANDARD OF REVIEW

¶9 "We review criminal sentences that include at least one year of actual incarceration for legality only." *State v. Rosling*, 2008 MT 62, ¶ 59, 342 Mont. 1, 180 P.3d 1102. When the issue on appeal is whether the district court violated a defendant's constitutional rights at sentencing, "the question is a matter of law which we review *de novo* to determine whether the district court's interpretation of the law is correct." *State v. Mason*, 2003 MT 371, ¶ 19, 319 Mont. 117, 82 P.3d 903 (overruled on other grounds by *State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978).

## DISCUSSION

¶10 *Whether the District Court unlawfully sentenced Simmons in violation of her due process rights.*

¶11 When imposing a sentence, the court may consider any relevant evidence relating to the defendant's character, history and mental condition, and any evidence the court deems has "probative force." *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996). The right to due process includes the right of a defendant to explain, argue and rebut any information which may lead to a deprivation of life or liberty. *State v. Roedel*, 2007 MT 291, ¶ 65, 339 Mont. 489, 171 P.3d 694. A defendant also has a due process guarantee against a sentence predicated on misinformation. *Kills On Top v. State*, 2000 MT 340, ¶ 67, 303 Mont. 164, 15 P.3d 422 (citing *Bauer v. State*, 1999 MT 185, ¶ 21, 295 Mont. 306, 983 P.2d 955). Despite this guarantee, the due process clause does not protect against all misinformation at sentencing. Instead, the inquiry turns on whether the court premised the sentence on materially false information. *Bauer*, ¶ 22.

5

¶12 Based on a review of the record, we conclude Simmons's due process rights were not violated when the District Court referenced her "negative behavior" while at RCDC. The court's lengthy discussion of the reasons for its sentence indicate it relied on the considerable evidence before it regarding the nature of Simmons's crimes, her amenability to treatment, and the likelihood of re-offense if she were not incarcerated. In addition to discussing Simmons's character and personality disorder, the court noted the seriousness of the offenses, finding "there is also a public safety concern due to the fact that the Defendant was essentially a small time drug dealer." Further, even though Simmons had no prior convictions, the court found the charges against her were "all part of a continuing course of an ongoing criminal enterprise." In sum, the District Court considered numerous pieces of evidence pertaining to Simmons's potential for rehabilitation and the severity of the crimes she committed. Simmons has not met her burden on appeal of showing the sentencing court relied on materially false allegations in forming the sentence. *Bauer*, ¶ 22 ("a defendant is under an 'affirmative duty' to show the alleged misinformation is materially inaccurate or prejudicial before a sentence will be overturned by this Court.").

¶13 Finally, Simmons's due process rights were not violated when the District Court exercised its discretion to cut short the cross examination. A convicted defendant does not have an unfettered right to cross-examine witnesses during a sentencing hearing. "[T]he right of cross-examination at a presentence hearing is a discretionary matter of the trial court and will not be overruled without a showing of abuse of that discretion." *State*

6

*v. Trangsrud*, 200 Mont. 303, 307-08, 651 P.2d 37, 39-40 (1982) (citing *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949)). The "latitude of cross-examination is in the discretion of the trial court, and this Court will not interfere unless it is manifest that the trial court abused its discretion." *State v. Atlas*, 224 Mont. 92, 101, 728 P.2d 421, 427 (1986). The courts are thus endowed with flexibility in structuring cross-examination during a sentencing hearing so long as the procedures sufficiently protect a defendant's rights. Here, the court imposed the sentence after Simmons had the opportunity to cross-examine witnesses against her and to call witnesses on her own behalf to rebut the State's evidence and offer alternative explanations for Simmons's behavior. Such safeguards were sufficient to protect her due process rights.

## CONCLUSION

¶14 Based on the controlling authority cited above, the record demonstrates the District Court's sentence was lawful and did not violate Simmons's due process rights. The judgment of the District Court is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

7