FILED

02/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0389

DA 15-0389

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 39

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

MATTHEW DAVID SHERMAN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 13-220
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

          William E. Fulbright, Ravalli County Attorney, Thorin Giest, Deputy
County Attorney, Hamilton, Montana

          Submitted on Briefs:  February 1, 2017

                      Decided:  February 28, 2017

Filed:

_____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Matthew Sherman pleaded guilty to two felonies and one misdemeanor for possessing dangerous drugs with intent to distribute. At sentencing, the District Court allowed the State to admit evidence, over Sherman's objection, of an allegation that Sherman had raped his cellmate while in jail. The court sentenced Sherman to 100 years in prison as a persistent felony offender. Sherman argues that his sentence must be reversed because the court relied on the rape allegation after assuring him that it would not do so.

¶2 We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3 In October 2013, Ravalli County Sheriff's officers arrested Sherman at a motel in Hamilton, Montana, after receiving information that he was distributing dangerous drugs. Officers recovered methamphetamine and marijuana upon searching Sherman's motel room and vehicle.

¶4 Sherman entered into an open plea agreement in December 2014 in which he pleaded guilty to three offenses: felony possession of dangerous drugs with intent to distribute; felony possession of dangerous drugs; and misdemeanor possession of dangerous drugs. The plea agreement provided a maximum possible penalty for the three combined counts of 200 years and six months in prison, plus a $100,500 fine. It provided also that Sherman would be sentenced as a persistent felony offender.

¶5 The court held a sentencing hearing in April 2015. The Pre-Sentence Investigation (PSI) report contained a summary of Sherman's criminal history, which

2

included numerous drug-related convictions. The report added a "Jail Adjustment Summary" discussing Sherman's myriad behavioral incidents while detained at the Ravalli County Detention Center after his October 2013 arrest. The summary included, among other incidents, Sherman's attempts to "cheek" or "pocket" his medications, his striking another inmate in the face, an allegation that he intimidated other inmates to give him their commissary items and extra phone minutes, and an allegation that he had raped his cellmate in February 2015. The rape allegation was still under investigation at the time of the sentencing hearing and had not resulted in a criminal charge.

¶6 At the sentencing hearing, the State sought to admit a jail incident report discussing the alleged rape. Sherman's counsel objected to the report and to the discussion of the alleged rape in the PSI report on the grounds that investigation into the incident was ongoing and that the court's consideration of the incident would violate Sherman's due process rights. The District Court overruled the objection, reasoning that evidence of the alleged rape "would have some limited utility in regard to the Defendant's behavior in the detention center." Of the substance of the rape allegation, the court stated, "[I]f there's [sic] no convictions or charges even, I won't be relying on this in making my sentence." Sherman offered no evidence to rebut the allegation.

¶7 The court sentenced Sherman to 100 years in prison and explained in open court the reasons for the sentence. It observed that Sherman had at least ten prior felony convictions, most of which pertained to possessing, transporting, or distributing controlled substances, in addition to various drug-related misdemeanor offenses. It highlighted Sherman's 2003 convictions for possession of methamphetamine and using a

communication device to facilitate distribution, for which Sherman was sentenced to seven years in prison and four years of probation. It emphasized that Sherman had absconded from probation and was in violation of that probation when he was arrested in October 2013. It noted that, as a primary source of methamphetamine distribution in Ravalli County, Sherman had caused significant "social damage" to the community. The court stated that it recognized many of the names of persons to whom Sherman had distributed methamphetamine and noted that their methamphetamine use had caused significant damage to them and to their families. In some cases, the court pointed out, the methamphetamine users had lost their parental rights because of their addictions. Due to Sherman's extensive record of drug-related offenses, the court doubted that Sherman would be amenable to treatment or rehabilitation.

¶8 The court noted further that Sherman had a "lengthy history of problems in the jail . . . [m]ore than anybody [the court had] ever sentenced before." The court did not specifically mention the allegation that Sherman had raped his cellmate. It concluded that the primary goal of the sentence should be to remove Sherman permanently from the drug trade. Sherman appeals.

## STANDARD OF REVIEW

¶9 Whether a district court violated a defendant's constitutional rights at sentencing is a question of law that we review de novo. *State v. Simmons*, 2011 MT 264, ¶ 9, 362 Mont. 306, 264 P.3d 706.

**DISCUSSION**

¶10    *Whether the District Court violated Sherman's due process rights at sentencing.*

¶11    Sherman contends that the District Court violated his due process rights by falsely assuring him that it would not rely on the allegation of rape in making its sentencing decision. He asserts that he relied on this assurance in choosing not to offer any evidence to rebut the rape allegation. He argues that the court impermissibly considered the rape allegation in imposing sentence, thereby misleading Sherman and effectively denying him the opportunity to explain or rebut the allegation.

¶12    The Montana and United States constitutions guarantee against depriving a person of liberty without due process of law, and these protections apply in sentencing hearings. U.S. Const. amend. XIV, § 1; Mont. Const. art. II, § 17; *State v. Webb*, 2005 MT 5, ¶ 18, 325 Mont. 317, 106 P.3d 521. "Due process requires that an offender be given an opportunity to explain, argue, and rebut any information, including pre-sentencing information[,] that may lead to a deprivation of life, liberty, or property." *State v. Mainwaring*, 2007 MT 14, ¶ 16, 335 Mont. 322, 151 P.3d 53 (citing *Bauer v. State*, 1999 MT 185, ¶ 22, 295 Mont. 306, 983 P.2d 955).

¶13    A defendant's due process rights include protection against a sentence "predicated on misinformation." *Simmons*, ¶ 11; *accord State v. Mason*, 2003 MT 371, ¶ 21, 319 Mont. 117, 82 P.3d 903. "[W]here a sentencing court is found not to have relied on improper or erroneous information in sentencing a criminal defendant," however, "the defendant is not entitled to resentencing on due process grounds." *State v. Phillips*, 2007 MT 117, ¶ 17, 337 Mont. 248, 159 P.3d 1078 (quoting *Mason*, ¶ 21; *Bauer*, ¶ 24).

5

The defendant has an "affirmative duty" to show that the sentence was premised upon "materially inaccurate or prejudicial" information. *Bauer*, ¶ 22.

¶14 Sherman argues that he was denied "an opportunity to explain, argue, and rebut" the rape allegation. *Mainwaring*, ¶ 16. But the court overruled Sherman's objection to the State's evidence of the allegation and told Sherman that the evidence "would have some limited utility in regard to [Sherman's] behavior in the detention center." Sherman knew of the allegation when he received the PSI report before sentencing and was advised of the court's ruling on the incident report. The court did not preclude Sherman from rebutting this evidence; instead, Sherman decided that such a rebuttal was not necessary in light of the court's comments.

¶15 Sherman's due process argument rests on the premise that the court relied on the unproved rape allegation in making its sentencing decision. In *Simmons*, we held that the sentencing court did not violate the defendant's due process rights when it limited Simmons's cross-examination of a jail detention officer who testified to Simmons's behavioral issues at the detention center. *Simmons*, ¶¶ 6, 12. The court stated that it would not "grade" Simmons on her behavioral issues in making its sentencing decision. *Simmons*, ¶ 6. When the court sentenced Simmons, it gave numerous reasons for its decision, including a reference to her "negative behavior in the detention center." *Simmons*, ¶ 7. We concluded that, apart from Simmons's behavior in the detention center, "the District Court considered numerous pieces of evidence pertaining to Simmons's potential for rehabilitation and the severity of the crimes she committed." *Simmons*, ¶ 12. We held that Simmons had not "met her burden on appeal of showing the

sentencing court relied on materially false allegations in forming the sentence." *Simmons*, ¶ 12.

¶16 Here, as in *Simmons*, the record does not support a finding that the District Court relied on the rape allegation in making its sentencing decision. The court's detailed explanation of its decision focused on Sherman's lengthy criminal history, the "social damage" his criminal actions had caused, the improbability of his rehabilitation, and the need to remove him from the drug trade. It emphasized that Sherman was "a methamphetamine distributor to other distributors" and that a treatment program would not be successful. The court told Sherman, "you've been in prison before; you've not changed your behavior as a result of that experience." Due to the court's conclusion that Sherman would not be "amenable to treatment or rehabilitative efforts," the court told Sherman, "it seems to me that my primary duty here today is to incapacitate you so that you will be permanently removed from the drug trade and never have the opportunity to destroy any other lives with this activity." The court gave mention to Sherman's "lengthy history of problems in the jail." But it did not identify the alleged rape as having any influence on the decision, and its extensive explanation clearly reveals the real rationale for the court's sentence.

¶17 The record shows that the court rested its sentencing decision on Sherman's continuous and substantial involvement in the drug trade. It "considered numerous pieces of evidence" regarding his history of drug dealing and the devastating community impact of his actions. *Simmons*, ¶ 12. That evidence—not the jailhouse rape allegation—formed the basis for the sentence. Sherman has failed to meet his burden on

7

appeal of showing that the court premised its sentencing decision on "materially inaccurate or prejudicial" information.  *Bauer*, ¶ 22.

## CONCLUSION

¶18    We conclude that Sherman "is not entitled to resentencing on due process grounds."  *Phillips*, ¶ 17.  The judgment of the District Court is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE